T.C. Memo. 2009-229


UNITED STATES TAX COURT


FERNANDO POWERS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10758-06L.              Filed October 5, 2009.


        P submitted a 2001 Form 1040, listing as "-0-" his
income, adjusted gross income, tax and credits, other
taxes, and amount owed.  On this form P claimed three
daughters as dependents; he also claimed a refund for
the Federal income tax withheld amounts shown on the
Form W-2 and the Form 1099-R attached thereto.  R made
adjustments to P's 2001 Form 1040.  R contends that R
sent to P a notice of deficiency and P received it; P
contends otherwise.  R assessed and initiated
collection proceedings.  P requested a hearing.
Ultimately, R sent to P a notice of determination to
proceed with collection.  P then petitioned this Court.
R moved for summary judgment and to impose a penalty
under sec. 6673(a)(1), I.R.C. 1986.

        1.  <u>Held</u>:  R failed to show there is no genuine
issue as to the material fact of whether R sent a
notice of deficiency to P.

2. Held, further, R failed to show there is no genuine issue as to the material fact of whether P received a notice of deficiency.

3. Held, further, R is entitled to summary judgment that the settlement officer employed in R's Appeals Office was permitted to conduct the administrative collection hearing.

4. Held, further, R is entitled to summary judgment that R's settlement officer was impartial.

5. Held, further, R is entitled to summary judgment that R's answer was timely filed in accordance with our Rules, and so P is not entitled to a default judgment.

6. Held, further, because P's actions in the further proceedings in the instant case may affect our ruling as to sec. 6673(a)(1), I.R.C. 1986, R's motion to impose a penalty will be denied; this matter is to be reexamined at an appropriate later time, at the Court's own motion if necessary.

Fernando Powers, pro se.

Carol-Lynn E. Moran, for respondent.


MEMORANDUM OPINION

CHABOT, Judge:  This matter is before us on respondent's motion for summary judgment under Rule 121[1] and to impose a penalty under section 6673.[2]  Petitioner commenced this case in

---

[1]Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1986 as in effect for

(continued...)

response to Notices of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330.[3]  Respondent moved for summary judgment "upon all issues presented in this case".  We separately consider and rule on a number of those issues.  We then consider and rule on respondent's motion to impose a penalty under section 6673.

Our statements as to the facts are based on the parties' exhibits, those matters that are admitted in the pleadings and other documents in the Court's file (e.g., petitioner's request for admissions and respondent's response thereto), and those matters that are admitted in the motion papers.

## Background

When the petition was filed in the instant case, petitioner resided in New Jersey.

In early 2002 petitioner sent to respondent a Form 1040, U.S. Individual Income Tax Return, for 2001, hereinafter sometimes referred to as petitioner's 2001 Form 1040.  Attached to petitioner's 2001 Form 1040 were (1) a Form 1099-R,

---

[2](...continued) proceedings commenced on the date the petition in the instant case was filed, except that the section references in table 1 and the footnotes thereto, infra, are to sections of the Internal Revenue Code of 1986 as in effect for 2001.

[3]The notices pertained to 2001 and 2002.  Respondent previously moved to dismiss as to 2002 for lack of jurisdiction, and the Court granted that motion.  Thus, only 2001 remains before us.

Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., showing a total distribution from a "Thrift and Stock Plan" of $9,984.91, with $1,996.98 Federal income tax withheld and $105 New Jersey State tax withheld, and (2) a Form W-2, Wage and Tax Statement, showing compensation of $35,287.17, with $159.92 Federal income tax withheld and $718.72 New Jersey State income tax withheld.

During 2002 employees of the Internal Revenue Service (hereinafter collectively referred to as the IRS) and petitioner communicated with each other. On December 1, 2002, the IRS sent a letter to petitioner stating that petitioner's 2001 Form 1040 "cannot be processed". The letter stated there was enclosed a report proposing "tax and penalties" and asked for a response within 30 days. On December 12, 2002, the IRS received a letter in response from petitioner, contending the IRS has no authority to "change" his tax return and stating that he did not intend to "self-assess" any 2001 income tax liability against himself.

The IRS prepared a notice of deficiency addressed to petitioner and dated May 21, 2003. (There is a dispute as to whether this notice of deficiency was sent and, if it was sent, whether petitioner received it.)

Table 1 compares certain items on petitioner's 2001 Form 1040 with corresponding items on the notice of deficiency.

## Table 1

| Item | Petitioner's 2001 Form 1040 | Notice of Deficiency |
|---|---|---|
| Filing status | [1]Single/head of household | Single |
| Adjusted gross income | -0- | [2]$51,991.00 |
| Dependents | 3 | -0- |
| Personal exemption | -0- | (2,900.00) |
| Deductions | -0- | [3](4,550.00) |
| Taxable income | -0- | 44,541.00 |
| Sec. 1 income tax | -0- | 8,863.00 |
| Credits | -0- | [4]300.00 |
| "IRA tax" | -0- | [5]998.00 |
| Total tax liability | -0- | 9,561.00 |
| Withholding | $2,156.90 | [6]2,155.00 |
| Refund | 2,156.90 | -0- |
| Balance due | -0- | 7,406.00 |
| Sec. 6651(a)(1) addition | --- | 1,851.50 |
| Sec. 6654 addition | --- | [7]286.40 |
| Interest (to 12/31/2002) | --- | 404.21 |
| Amount due | -0- | 9,948.11 |

[1]Petitioner showed himself as both "Single" and "Head of household" on the Filing Status portion of his 2001 Form 1040.

[2]This is the sum of the five income adjustments in the notice of deficiency--three Form W-2 wage items, a Form 1099-R distribution item, and an unemployment compensation item.

[3]Respondent allowed the standard deduction for a single taxpayer. The standard deduction for a head of household was $6,650.

[4]Rate reduction credit.

[5]We surmise that this is the 10-percent additional tax under sec. 72(t) on account of the $9,984.91 distribution shown on a Form 1099-R attached to petitioner's 2001 Form 1040.

[6]At the hearing on respondent's motion, respondent conceded that petitioner was entitled to the additional $1.90 credit for withholding.

[7]In the calculation of the sec. 6654 addition to tax in the notice of deficiency respondent determined that the prior year tax liability was "0.00". We draw respondent's attention to Wheeler v. Commissioner, 127 T.C. 200, 210-212 (2006), affd. 521 F.3d 1289 (10th Cir. 2008).

On October 13, 2003, respondent assessed the amounts shown in table 2.

Table 2

| Item | Amount |
| --- | --- |
| Additional tax | $9,561.00 |
| Late filing "penalty" | 1,666.35 |
| Failure to pay tax "penalty"[1] | 666.54 |
| Estimated tax "penalty"[2] | 286.40 |
| Interest | 770.90 |

[1]The notice of deficiency, in the "Explanation of the Delinquency Penalty" portion, states:  "5. Failure to Pay penalty rate 0.000" and that the amount of the "penalty" is "0.00".  We draw respondent's attention to Wheeler v. Commissioner, 127 T.C. at 208-210.
[2]See supra note 7 to table 1.

The parties agree that respondent sent to petitioner a notice of tax lien for 2001, dated June 28, 2005.

Respondent sent to petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320, dated July 7, 2005, hereinafter sometimes referred to as the notice of filing. In the notice of filing respondent stated that on June 30, 2005, respondent had filed a notice of tax lien in the amount of $10,796.19 on account of petitioner's 2001 income tax liability (see supra note 3, regarding an unrelated 2002 item), that this "lien attaches to all property you currently own and to all property you may acquire in the future", and that petitioner has "a right to request a hearing with us to appeal this collection action and to discuss your payment method options."  Enclosed with the notice of filing was a Form 12153, Request for a

Collection Due Process Hearing (hereinafter sometimes referred to as the hearing request), and an instruction that petitioner "must request [his] hearing by 08/08/2005."

On July 24, 2005, petitioner submitted a hearing request identifying the taxable periods as 1996 through 2002 and stating: "1996 and prior we were a family of 5, then from 1996-97 to present day I'm single with three children." In the hearing request, petitioner listed the following reasons for disagreement with respondent:

> 1. If I had a liability my children were never computed in by the IRS! [At this point in the hearing request petitioner set forth the names and Social Security numbers of the three children.]
>
> 2. I was never given DPH (Due Process Hearing) when I requested for it, or an audit! IRS is subject to 6320.
>
> 3. IRS never responded to my letters or responses to the IRS or my request for a face to face hearings. (Please read your mission statement)
>
> 4. IRS has failed to follow their statutory laws and manuals in violation of 7214 title 26, that they are subject to. Yick Wo v. Hopkins. U.S. Supreme Court. [Reproduced literally.]

Respondent's settlement officer, Darryl Lee (hereinafter sometimes referred to as Lee), replied to the hearing request on February 23, 2006. Lee is a settlement officer employed in respondent's Philadelphia Appeals Office; he is not an appeals officer. In that reply, Lee verified receipt of the hearing request and said: "The items that you mention in your CDP

request are items that: 1. Courts have determined are frivolous or groundless, or 2. Appeals does not consider. These are moral, religious, political, constitutional, conscientious, or similar grounds." Lee referred petitioner to a Web site containing examples of arguments that are considered frivolous or groundless, and then noted: "Appeals does not provide a face-to-face conference if the only items you wish to discuss are those mentioned above." Lee asked petitioner to write within 15 days to "describe the legitimate issues you will discuss" at a hearing and stated that a telephone conference would be available to petitioner: "I have scheduled a telephone conference for you on March 30, 2006 at 10:00 am."[4]

Petitioner replied to Lee in a letter apparently sent on or about March 7, 2006, stating that Lee did not specify which of petitioner's arguments were frivolous and asking Lee to do so. Petitioner stated: "I want to have a face to face meeting and be able to record as I have done so for other previous years". Petitioner added: "I do not have a long distance phone to use to call you or anyone available on that date that you placed on your

---

[4]In the pleadings, the parties agree that Lee's letter scheduled the telephone conference for <u>11 a.m.</u> Our finding of <u>10 a.m.</u> is a quotation from Lee's letter, which is attached as an exhibit to Lee's declaration in support of respondent's summary judgment motion. See <u>Jasionowski v. Commissioner</u>, 66 T.C. 312, 318 (1976). We note also that respondent's motion papers state the telephone conference was scheduled for <u>10 a.m.</u>

letter to me which is March 30, 2006." In this letter, as in the hearing request and his 2001 Form 1040, petitioner stated that he is a single parent of three daughters.

Lee replied to petitioner on March 23, 2006, again denying petitioner a face-to-face hearing because petitioner did not inform him, "in writing, of the legitimate issues" that petitioner intended to raise at the hearing. Lee stated: "At this time, you are prohibited from recording[5] or having a face to face conference." Lee concluded: "Since you do not have long distance on your telephone, provide me with a contact phone number you can be reached at on March 30, 2006 at 10:00am." (Emphasis added.)

On March 30, 2006, Lee wrote to petitioner about the telephone conference: "The conference was scheduled for March 30, 2006 at 11:00am. I tried calling you at the scheduled time but you were not available and you had not called to indicate that this date and/or time were not convenient." (Emphasis added.) Lee added: "Please be advised that we will make a determination in the Collection Due Process hearing you requested by reviewing the Collection administrative file and whatever information you have already provided." Lee also said that

---

[5]See Calafati v. Commissioner, 127 T.C. 219 (2006); Keene v. Commissioner, 121 T.C. 8 (2003).

petitioner could provide additional information "within 14 days from the date on this letter."

On May 5, 2006, respondent sent to petitioner two documents titled "Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330", for 2001.[6] The notices are identical and were sent to petitioner at two different addresses. The notices state, in pertinent part,[7] as follows:

CHALLENGES TO THE APPROPRIATENESS OF COLLECTION ACTIONS

You did not challenge collection actions. You were sent an appointment letter dated February 23, 2006 for a telephone conference on March 30, 2006. Since you failed to call for your conference, you were sent a final opportunity letter dated March 30, 2006 that provided you 14 days to provide information to be considered for your hearing. You failed to submit any information.

The issues you address on your request for a hearing were determined to be frivolous. You were advised of this in your appointment letter. You failed to send in a letter with issues you would like to address other than those determined to be frivolous.

No issues were raised.

---

[6]Another pair of notices was sent at the same time for 2002. See supra note 3.

[7]The notices also state that the notice of filing "was sent to you [petitioner] on July 7, 2005. Your Form-12153 was received on July 29, 2005. The request is not timely." Petitioner's Form 12153 (the hearing request) was timely--the notice of filing directed petitioner to file the form by "08/08/2005", and in this proceeding respondent has consistently admitted the timeliness. The record shows that respondent has proceeded on the basis that the hearing request was timely. Thus this error in the notices has merely been a distraction that has not affected petitioner's rights.

The notices are signed by Laura Weening, Appeals Team Manager; they state that Lee is the "Person to Contact".

Petitioner then timely filed a petition with this Court.

## Discussion

### 1. Parties' Contentions, Conclusions

Respondent contends that respondent mailed and petitioner received the notice of deficiency for 2001. In support of this contention, respondent invokes the presumptions of official regularity and delivery of the mail. In regard to the administrative collection hearing, respondent contends that Lee attempted to call petitioner on the telephone for the administrative collection hearing, but petitioner did not answer. Respondent maintains that Lee then sent a "second chance" letter to petitioner, but petitioner did not respond to that letter. Respondent denies that there was a "default" on respondent's part.

Respondent further contends that a penalty should be imposed on petitioner under section 6673 because petitioner is using the Tax Court collection proceeding merely to raise frivolous arguments and to delay collection.

Petitioner contends that (1) respondent did not issue and he did not receive a notice of deficiency for 2001; (2) respondent failed to provide him with an administrative collection hearing; (3) he is entitled to a default judgment under Rule 123; (4) an

appeals officer, rather than a settlement officer, should have conducted the administrative collection hearing; and (5) respondent's settlement officer was not impartial. Petitioner also objects that he does not know what he has done that respondent contends is frivolous.

We conclude that (a) respondent is not entitled to summary judgment on the material facts of (1) whether respondent sent a notice of deficiency to petitioner and (2) whether petitioner received any such notice of deficiency; (b) respondent is entitled to summary judgment that (1) Lee, a settlement officer employed in respondent's Appeals Office, was permitted to conduct the administrative collection hearing; (2) Lee was impartial, and (3) respondent timely filed the answer and so the filing of the answer was not a violation of our Rules and so does not lead us to declare a default; (c) other matters that may be subsumed in respondent's summary judgment motion may be moot and so will be denied without prejudice. We will deny respondent's motion to impose a penalty under section 6673 but only because petitioner's actions in further proceedings in the instant case may affect our ultimate ruling; this matter is to be revisited at an appropriate time.

2.  In General--Summary Judgment

Summary judgment is a procedure used to expedite litigation; it is intended to avoid unnecessary and expensive trials.

However, it is not a substitute for trial; it should not be used to resolve genuine disputes over material factual issues. Cox v. American Fidelity & Casualty Co., 249 F.2d 616, 618 (9th Cir. 1957); Vallone v. Commissioner, 88 T.C. 794, 801 (1987). A motion for summary judgment will be granted "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b).

Because the effect of granting a motion for summary judgment is to decide the case against a party without allowing that party an opportunity for trial, the procedure should be "cautiously invoked" and the motion should be granted only after a careful consideration of the case. Associated Press v. United States, 326 U.S. 1, 6 (1945); Cox v. American Fidelity & Casualty Co., 249 F.2d at 618; Kroh v. Commissioner, 98 T.C. 383, 390 (1992). The moving party has the burden of showing the absence of a genuine issue as to any material fact. Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 743 (3d Cir. 1996); Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985). For these purposes, the party opposing the motion is to be afforded the benefit of all reasonable doubt, and the material submitted by both sides must be viewed in the light most favorable to the opposing party;

that is, all doubts as to the existence of an issue of material fact must be resolved against the movant.  E.g., <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Pennsylvania Coal Ass'n v. Babbitt</u>, 63 F.3d 231, 236 (3d Cir. 1995); <u>Dreher v. Sielaff</u>, 636 F.2d 1141, 1143 n.4 (7th Cir. 1980); <u>Kroh v. Commissioner</u>, 98 T.C. at 390.  A motion for summary judgment may be granted in part and denied in part.  <u>Elect. Arts, Inc. v. Commissioner</u>, 118 T.C. 226, 238 (2002).

3.  <u>In General--The Collection Framework</u>

In general, section 6321 imposes a lien in favor of the United States on all property and rights to property of a person liable for tax when a demand for the payment of the person's taxes has been made and the person fails to pay those taxes. Such a lien arises when an assessment is made.  Sec. 6322.

Sections 6320 (relating to liens) and 6330 (relating to levies) generally provide protections for taxpayers in tax collection matters.  In general, sections 6320 and 6330 provide for notice and the right to an administrative hearing and judicial review when the Commissioner files a Federal tax lien or proposes to collect unpaid taxes by levy.  <u>Inv. Research Associates, Inc. v. Commissioner</u>, 126 T.C. 183, 185-186 (2006).

Section 6320(a)(1) requires the Commissioner to "notify in writing the person described in section 6321 of the filing of a notice of lien under section 6323."  Section 6320(a)(2) generally

sets forth the time and methods under which the Commissioner is required to provide the notice described in section 6320(a)(1). The flush language of section 6320(a)(2) provides that the notice required by section 6320(a)(1) is to be provided not more than 5 business days after the day of the filing of the notice of lien.[8] Section 6320(a)(3) describes the information required to be included in the notice described in section 6320(a)(1).  Section 6320(a)(3)(B) provides that the notice shall include "the right of the person to request a hearing during the 30-day period beginning on the day after the 5-day period described in paragraph (2)".[9]

Section 6320(b) affords taxpayers the right to a hearing before an impartial officer or employee of the Appeals Office. Pursuant to section 6320(b)(2), a taxpayer is entitled to only one hearing regarding the tax period relating to the amount of unpaid tax.

Section 6320(c), as effective for the instant case, provided that the hearing generally shall be conducted consistent with the procedures set forth in sections 6330(c), (d) (other than paragraph (2)(B) thereof), and (e).

---

[8]July 7, 2005, the date of the notice of filing, was the fourth business day after June 30, 2005, the date respondent filed the notice of tax lien.

[9]Petitioner submitted the hearing request on July 24, 2005, well within the required 30-day period.  See supra note 7.

Section 6330(c)(1) requires the appeals officer to obtain verification that the requirements of any applicable law or administrative procedure have been met.  Section 6330(c)(2)(A) provides that the taxpayer may raise at the hearing "any relevant issue relating to the unpaid tax or the proposed levy" including spousal defenses, challenges to the appropriateness of collection actions, and alternatives to collection.

Section 6330(c)(3) provides that a determination of the appeals officer shall take into consideration the verification under section 6330(c)(1), the issues raised by the taxpayer, and whether the proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that any collection action not be any more intrusive than necessary.

Section 6330(c)(2)(B) provides, in general, that a taxpayer may dispute the underlying tax liability at the administrative collection hearing if both of two requirements have been satisfied:  (1) The taxpayer did not receive a notice of deficiency for that tax liability and (2) the taxpayer did not otherwise have an opportunity to dispute that tax liability.  See Hoyle v. Commissioner, 131 T.C. ___, ___ (2008) (slip op. at 5). If either one of these requirements is not satisfied (i.e., if the taxpayer received the notice of deficiency or the taxpayer had another opportunity to dispute the tax liability), then

section 6330(c)(2)(B) does not provide authority for the taxpayer to dispute that tax liability at the administrative collection hearing. See Kuykendall v. Commissioner, 129 T.C. 77, 80[10] (2007) (as to notice of deficiency); Lewis v. Commissioner, 128 T.C. 48 (2007) (as to other opportunity to dispute).

When the Appeals Office issues a notice of determination to a taxpayer following an administrative collection hearing regarding a lien or levy action, sections 6320(c) (by way of cross-reference) and 6330(d)(1) provide that the taxpayer will have 30 days following the issuance of a notice of determination to seek judicial review. If the underlying tax liability is properly in issue, then the court will review the determination by the Appeals Office de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000). If, instead, the underlying tax liability is not in issue, then the court will review the determination of the Appeals Office for abuse of discretion. Id.

---

[10]In Kuykendall v. Commissioner, 129 T.C. 77 (2007), the parties disputed whether the taxpayers' actual receipt of the notice of deficiency 12 days before the end of the period for petitioning this Court constituted a receipt of the notice of deficiency for purposes of sec. 6330(c)(2)(B). We held that it did not. There not being any contention that the taxpayers otherwise had an opportunity to dispute their tax liability, we remanded to the Appeals Office for further proceedings. Id. at 82. As a result of the administrative hearing after the remand, the parties in that case agreed to a reduction of more than 40 percent in the taxpayers' liability. Kuykendall v. Commissioner, T.C. Memo. 2008-277.

4.  Summary Judgment Issues

    A.  The Notice of Deficiency--Sending and Receipt

    The parties dispute whether (1) respondent sent a notice of deficiency and (2) petitioner received one.  The analysis of each of these two issues involves examination of many of the same materials that have been presented to us in connection with the other of these issues.  But each of these issues has different consequences from the other, and so we consider them separately. We consider first the sending and then the receipt.

        (1) Whether a Valid Notice of Deficiency Was Sent To Petitioner

    In the setting of the instant case, if a valid notice of deficiency for 2001 was not sent to petitioner, then an assessment of a deficiency would be invalid.  See sec. 6213(a); Freije v. Commissioner, 125 T.C. 14, 35-37 (2005).  As we stated in Hoyle v. Commissioner, 131 T.C. at ___, ___ (slip op. at 14-15):

> Under sections 6321 and 6322, a tax lien arises in favor of the United States at the time an assessment is made.  If respondent did not validly assess petitioner's 1993 tax liability, then no lien would have arisen with respect to that tax liability and collection could not proceed.  Accordingly, if the assessment was invalid, the determination to proceed with collection was error as a matter of law. * * *

    Accordingly, whether respondent mailed the notice of deficiency is a material fact in the instant case and we must

determine whether respondent carried the summary judgment burden of showing that there is no genuine issue as to this fact.

Respondent asserts that "Respondent properly mailed the statutory notice of deficiency to the petitioner's last known address on May 21, 2003."[11]  But Lee's declaration, attached to respondent's motion, does not assert that a notice of deficiency was mailed, much less that it was "properly mailed" or that it was mailed on May 21, 2003.  Nor does any of the 17 exhibits attached to Lee's declaration (which we understand to be what respondent asserts are "the relevant documents contained in the administrative record from the CDP hearing") assert any of the foregoing.

Respondent filed a certified copy of the Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, as a supplement to the motion before us.  That document shows actions on various dates, including assessments having been made on October 13, 2003, but does not show any event as having occurred on May 21, 2003, and does not reference any mailing of a notice of deficiency.  A document described as "a literal

---

[11]At another point in the motion papers respondent asserts that "On May 21, 2003, respondent sent a statutory notice of deficiency to petitioner, proposing a tax liability for taxable year 2001 and additions to tax under I.R.C. §§ 6651(a)(1) and 6654(a)."  (Emphasis added.)  We assume respondent's contention is as to a notice of deficiency that determined deficiencies, and not a document proposing deficiencies, such as a so-called 30-day letter.

transcript for taxable year 2001", attached to Lee's declaration, is similar to the Form 4340; it also does not show any event as having occurred on May 21, 2003, and does not reference any mailing of a notice of deficiency.

In Lee's declaration, he asserts that he verified that all legal and procedural requirements were met.

Lee's declaration does not indicate what he relied on to verify that the notice of deficiency was mailed. Lee attached the notice of determination to his declaration. The entire explanation of this matter in the notice of determination is as follows:

VALIDITY OF THE ASSESSMENT

The assessment is valid.

Respondent's analysis in the summary judgment motion is as follows:

17. Respondent properly mailed the statutory notice of deficiency to petitioner's last known address on May 21, 2003. A copy of the notice of deficiency for taxable year 2001 sent certified mail to petitioner is contained in respondent's examination file, and is attached hereto as Declaration Exhibit D. While there is no United States Postal Service Form 3877 in the administrative file, the certified mail number 7112 7667 8555 3616 8042 is located on the first page of the statutory notice of deficiency, reflecting that the letter was sent out by certified mail to the petitioner. Respondent is entitled to rely upon presumptions of official regularity and delivery where the record reflects proper mailing of the statutory notice of deficiency. Sego v. Commissioner, supra [114 T.C. 604, 610 (2000)]; Bailey v. Commissioner, T.C. Memo. 2005-241. See also Figler v. Commissioner, T.C. Memo. 2005-230; Carey v. Commissioner, T.C. Memo. 2002-

209.  There is no evidence that the statutory notice of
deficiency was returned to the Service.  Petitioner did
not deny receipt of the notice of deficiency in his
Form 12153 or during the CDP hearing.  Thus, the
presumptions of official regularity and delivery have
not been rebutted.  Bailey v. Commissioner, supra.
Accordingly, the settlement officer did not consider
underlying liability.

None of the four cases respondent cites was a summary judgment

proceeding, with the special obligations that are imposed on the

movant of a summary judgment motion.  In Sego and Figler the

Commissioner presented U.S. Postal Service Forms 3877.  In the

instant case, not only was no Form 3877 presented; respondent

asserts there is no Form 3877 in the administrative file.  In

Bailey the parties stipulated that the notice of deficiency was

mailed; in the instant case, this is a disputed matter.  In Carey

the dispute was whether the notices of deficiency were mailed to

the taxpayer's last known address, not whether they were mailed

at all.  None of these cases supports respondent's position in

the summary judgment motion before us.

Hoyle v. Commissioner, 131 T.C. ___ (2008), is close to

being on all fours with the instant case, the main difference

being that Hoyle did not involve the additional obligations

imposed in the instant case because respondent is proceeding here

by way of summary judgment.  We stated as follows in Hoyle v.

Commissioner, 131 T.C. at ___, ___ (slip op. at 11-12, 13-14):

Respondent asserts that in the absence of clear
evidence to the contrary, respondent may rely on a
presumption of official regularity.  We have held that

exact compliance with Postal Service Form 3877 mailing procedures raises a presumption of official regularity in favor of the Commissioner and is sufficient, absent evidence to the contrary, to establish that the notice was properly mailed. <u>Coleman v. Commissioner</u>, 94 T.C. 91 (1990); see also <u>United States v. Zolla</u>, 724 F.2d 808, 810 (9th Cir. 1984). It may be true that an Appeals officer could rely on a properly completed Postal Service Form 3877 to meet his verification obligation under section 6330(c)(1); however, in the instant case, the administrative record did not contain a Postal Service Form 3877. Accordingly, the Appeals officer could not have based his verification on that form.

      *       *       *       *       *       *       *

In sum, it is unclear what the Appeals officer relied on to verify that the assessment of petitioner's 1993 tax liability was preceded by a duly mailed notice of deficiency. Because it is not clear from the record that respondent sent a notice of deficiency to petitioner before assessing the deficiencies in issue, we must decide whether it is appropriate for this Court to review petitioner's underlying tax liability de novo or whether instead we should remand to the Appeals Office for clarification of the basis for the Appeals officer's verification that all requirements of applicable law were met. [Fn. ref. omitted.]

In the instant case, as respondent notes, "there is no United States Postal Service Form 3877 in the administrative file". The material submitted does not include any other evidence of any mailing or any assertion that would meet the requirements of Rule 121(d).[12]

---

[12]Rule 121(d) provides as follows:

RULE 121. SUMMARY JUDGMENT

      *       *       *       *       *       *       *

(continued...)

All of the cases respondent relies on in the "presumptions-of-official-regularity-and-delivery" argument have anchored those presumptions in significant evidence; the argument in the instant summary judgment motion is not so anchored.

Respondent's argument in this setting puts us in mind of our response to a taxpayer's argument in Bibby v. Commissioner, 44 T.C. 638, 646 n.4 (1965):

> [4]Petitioners' explanation of how the intention to make a valid conveyance somehow results in such a conveyance actually being made is strikingly similar to the explanation given by Ko-Ko, the Lord High Executioner, to the Mikado of Japan in Gilbert and Sullivan's operetta.  To show how it could be that, although the Mikado had ordered an execution, the would-be victim was not yet deceased, Ko-Ko explained:

---

[12](...continued)

> (d) Form of Affidavits; Further Testimony; Defense Required:  Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or filed therewith. The Court may permit affidavits to be supplemented or opposed by answers to interrogatories, depositions, further affidavits, or other acceptable materials, to the extent that other applicable conditions in these Rules are satisfied for utilizing such procedures. When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of such party's pleading, but such party's response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, then a decision, if appropriate, may be entered against such party.  [Emphasis added.]

> When your Majesty says, "Let a thing be done," it's as good as done--practically, it <u>is</u> done--because your Majesty's will is law. Your Majesty says, "Kill a gentleman," and a gentleman is told off to be killed. Consequently, that gentleman is as good as dead--practically, he <u>is</u> dead--and if he is dead, why not say so?

Unlike the Mikado, we do not find the syllogism sufficiently persuasive.

On the basis of the foregoing, we conclude that respondent failed to show that there is no genuine issue as to the material fact of whether respondent mailed a notice of deficiency to petitioner. Consequently, summary judgment will be denied on this matter.

The parties must understand that this is not a ruling on the underlying issue; this ruling merely restores this matter to consideration under our normal procedures in collection cases. See <u>Hoyle v. Commissioner</u>, <u>supra</u>. As to further proceedings on this point, it may be helpful to compare <u>Butti v. Commissioner</u>, T.C. Memo. 2008-82, with <u>Butti v. Commissioner</u>, T.C. Memo. 2009-198.

(2) <u>Whether Petitioner Received a Notice of Deficiency</u>

In general the Commissioner must not assess a deficiency until a notice of deficiency has been sent to the taxpayer. Sec. 6213(a). If the notice of deficiency was sent to the taxpayer's last known address, then it is effective for section 6213(a) purposes even if the taxpayer did not receive the notice. Sec.

6212(b); see, e.g., <u>Mason v. Commissioner</u>, 132 T.C. \_\_\_, \_\_\_ n.9 (2009) (slip op. at 29); <u>Weber v. Commissioner</u>, 122 T.C. 258, 263 (2004); <u>Pietanza v. Commissioner</u>, 92 T.C. 729, 736 (1989), affd. without published opinion 935 F.2d 1282 (3d Cir. 1991). In contrast, under the collection statute, if the taxpayer did not receive a notice of deficiency, then the taxpayer generally would be entitled to dispute the underlying tax liability at the administrative collection hearing. Sec. 6330(c)(2)(B).[13]

Among the matters petitioner raised on many occasions (see <u>infra</u> 5. Sec. 6673 Penalty) is his entitlement to claim the income tax benefits that may result from his being "single with

---

[13]Sec. 6330(c)(2)(B) provides as follows:

SEC. 6330.  NOTICE AND OPPORTUNITY FOR HEARING BEFORE LEVY.

*    *    *    *    *    *    *

(c) Matters Considered at Hearing.--In the case of any hearing conducted under this section--

*    *    *    *    *    *    *

(2) Issues at hearing.--

*    *    *    *    *    *    *

(B) Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

three children", his having identified the children by name and Social Security number. This appears to be a nonfrivolous issue that (if he prevailed on it in whole or part) could reduce his 2001 income tax liability.[14]

Accordingly, the issue of whether petitioner received a notice of deficiency appears to be an issue as to a material fact. Cf. Elect. Arts, Inc. v. Commissioner, 118 T.C. at 256.

We consider whether the movant, respondent, has shown that in the words of Rule 121(b), this is "no genuine issue". That brings us to the question of whether respondent has shown that petitioner received the notice of deficiency, a copy of which is included in respondent's motion papers and is described supra in table 1.[15]

Respondent's contentions in this regard are essentially the same as those with regard to the mailing issue, supra, relying on

---

[14]Respondent directs our attention to Carrillo v. Commissioner, T.C. Memo. 2005-290, Holliday v. Commissioner, T.C. Memo. 2005-240, and Delgado v. Commissioner, T.C. Memo. 2005-186. In all of these cases we concluded that the taxpayers failed to identify any specific colorable or legitimate issues. Viewing the instant case through the lens of respondent's summary judgment motion, we conclude that petitioner's repeated claim to being "single with three children" is a colorable or legitimate issue.

[15]Respondent does not contend, in connection with the instant summary judgment motion, that petitioner had any other opportunity to dispute his tax liability, so we focus on the notice of deficiency alternative in sec. 6330(c)(2)(B). Cf. Lewis v. Commissioner, 128 T.C. 48 (2007).

the same four opinions. We conclude that none of the four opinions supports respondent's position on the receipt issue.

In Sego v. Commissioner, 114 T.C. 604 (2000), we held that, for purposes of section 6330(c)(2)(B), a taxpayer may not defeat receipt of the notice of deficiency by deliberately refusing it. In so holding, we relied on the substantial evidence there in the record indicating that the notice of deficiency was properly sent and, absent the taxpayer's refusal to accept delivery, would have been received:

> The record in this case contains a copy of a notice of deficiency dated August 13, 1997, addressed to Davina Sego; a Form 3877 indicating that the notice was sent on the date it bears; corroborating Postal Service forms and testimony indicating attempted delivery of the statutory notice to Davina Sego at the address acknowledged by petitioners to be their residence; and evidence that Davina Sego would not have petitioned the Court in response to the statutory notice of deficiency if she had actually received it. * * *

> * * * Based on the Court's observation of petitioners, their claims are at best misguided and, in any event, unreliable and improbable. On the preponderance of the evidence, we conclude that the statutory notice of deficiency was sent to Davina Sego and that the notices of attempted delivery of certified mail were left at petitioners' residence as testified by the Postal Service employee. Further, we conclude that each petitioner had an earlier opportunity to dispute in this Court his or her tax liability for 1993, 1994, and 1995 and deliberately declined to do so. See sec. 6330(c)(2)(B). [Id. at 610-611.]

In contrast to the substantial evidence presented in Sego, respondent (in the instant summary judgment motion) has not presented (1) a U.S. Postal Service Form 3877 demonstrating that

the notice was sent on the date contained in the notice; (2) other U.S. Postal Service forms and corroborating affidavits indicating attempted delivery of the notice of deficiency; or (3) evidence demonstrating that even if petitioner had received the notice, he would not have petitioned the Tax Court.  Nor has respondent provided any evidence that petitioner deliberately refused the notice of deficiency.  Respondent cannot find support in Sego.

In Bailey v. Commissioner, T.C. Memo. 2005-241, the taxpayer stipulated that the notice of deficiency was mailed to him and sent to the correct address, and he testified "that he '[didn't] * * * recall receiving it' and he 'did not document the receipt of it.'"  In contrast, in the instant case, (1) respondent has failed to establish that the notice of deficiency was sent, (2) there is no equivocation in petitioner's denial of the fact of receipt, and (3) the summary judgment setting requires us to view disputed facts in the light most favorable to the party opposing the motion.

In Figler v. Commissioner, T.C. Memo. 2005-230, the Commissioner presented extensive evidence to show that the notice of deficiency was mailed to the taxpayer and that the taxpayer had previously refused to accept certified mail that the Commissioner sent to the taxpayer; that foundation is completely absent in the instant case's summary judgment setting.

In <u>Carey v. Commissioner</u>, T.C. Memo. 2002-209, the Commissioner presented evidence of attempted delivery of the notices of deficiency, and the Court had the benefit of observing the taxpayer husband during his testimony and concluding that the taxpayers had deliberately refused delivery of the notices of deficiency; that foundation is completely absent in the instant case's summary judgment setting.

On the basis of the foregoing, we conclude that respondent failed to show that there is no genuine issue as to the material fact of whether petitioner received a notice of deficiency. Consequently, summary judgment will be denied on this matter.

The parties must understand that this is not a ruling on the underlying issue; this ruling merely restores this matter to consideration under our normal procedures in collection cases.

B.  <u>Whether the Settlement Officer May Conduct the Hearing</u>

Petitioner contends that the use of a settlement officer rather than an appeals officer to conduct his administrative collection hearing violates the Treasury Department's "rules and regulations".

Both section 6320(b) and section 6330(b) provide that the taxpayer has the right to a hearing, that the hearing is to be "held by the Internal Revenue Service Office of Appeals", and that the hearing "shall be conducted by an officer or

employee".[16]  Lee is a settlement officer employed in respondent's Philadelphia Appeals Office.  Thus the use of Lee to conduct the administrative collection hearing does not violate the requirements of the statute.  Section 6330(b)(3) is identical to section 6320(b)(3) in this respect.  Petitioner has not directed our attention to, and we have not found, any provision of the statute that would prohibit settlement officers from conducting the administrative collection hearing.

Section 301.6320-1(d)(1), Proced. & Admin. Regs., directs that "A CDP hearing will be conducted by an employee or officer of Appeals".  Thus the use of Lee to conduct the hearing is authorized by the relevant regulation.  Section 301.6330-1(d)(1), Proced. & Admin. Regs., is identical to section 301.6320-1(d)(1), Proced. & Admin. Regs., in this regard.  Petitioner has not directed our attention to, and we have not found, any Treasury

---

[16]We note that the heading of par. (3) of both of these sections is "Impartial officer."  However, the text plainly authorizes conduct by "an officer or employee".  (Emphasis added.)  As we noted in another context in Estate of Rosenberg v. Commissioner, 86 T.C. 980, 990 (1986), affd. without published opinion 812 F.2d 1401 (4th Cir. 1987), the heading of a provision

cannot limit the plain meaning of the statutory provisions themselves.  United States v. Minker, 350 U.S. 179, 185 (1956); Brotherhood of Railroad Trainmen v. Baltimore & Ohio Railroad Co., 331 U.S. 519, 528-529 (1947); Barbados #6 Ltd. v. Commissioner, 85 T.C. 900, 906 n.11 (1985). * * *

Department regulation, or any "rule" of the Treasury Department or the Commissioner that would be violated by settlement officers' conducting hearings.

We conclude that there is no genuine issue of material fact and that a decision may be rendered as a matter of law that respondent may have a settlement officer conduct the administrative collection hearing. We will grant summary judgment on this matter.

C. Whether the Settlement Officer Was Impartial

Petitioner contends Lee was not impartial. Petitioner does not contend that Lee had prior involvement with respect to the unpaid tax involved in this case. See secs. 6320(b)(3), 6330(b)(3). Instead, petitioner states:

> Darryl Lee simply picked and choose what would give his employer the Commissioner of the I.R.S. a win rather then being impartial. Which in the case in the federal District Court for the District of New Jersey Fernando Powers V. Commissioner of the I.R.S. Docket number CASE NO. 06-2391 (NLH) the Department of Justice admits that the Internal Revenue Service is not part of the American Government, further raising more questions. Was the SETTLEMENT OFFICER REALLY BEING IMPARTIAL? [Reproduced literally.]

Rule 121(d) requires an adverse party to respond to a motion for summary judgment with "specific facts showing that there is a genuine issue for trial." Our evaluation of the record herein leads us to conclude that petitioner's argument is not properly supported because petitioner did not provide any specific facts showing that Lee was biased. Instead, it appears that petitioner

disagreed with Lee's conclusions, and from that disagreement petitioner infers bias. But much more must be shown for a finding of bias. Accordingly, given the lack of a factual basis for petitioner's claim, there is not a genuine issue of material fact as to whether Lee was biased. Thus, we will grant summary judgment on this matter.

D. Default Judgment

Petitioner maintains that he is entitled to a default judgment under Rule 123. He argues that respondent's attorney:

> stated on her briefs dated February 15, 2006, paragraph one (1) pleadings in this case as being closed on July 20, 2006. Clearly by looking at the trial log one can see that the respondent filed the day after on July 21, 2006 therefore putting the Commissioner in Default under Tax Court Rule 123 DEFAULT AND DISMISSAL (a)(b)(c). [Reproduced literally.]

We gather that the thrust of petitioner's contention is that (1) respondent asserts that the pleadings were closed on July 20, 2006; (2) respondent's answer was not filed until July 21, 2006; (3) accordingly, petitioner contends, respondent may be held to be in default under Rule 123(a).

The pleadings in the instant case consist of petitioner's petition and respondent's answer. No reply or other responsive pleading has been filed or directed. See Rule 30. As a result, the pleadings were closed in the instant case on July 21, 2006, when respondent's answer was filed. See Nis Family Trust v. Commissioner, 115 T.C. 523, 535-536 (2000); Abrams v.

<u>Commissioner</u>, 82 T.C. 403, 404 (1984); <u>Jarvis v. Commissioner</u>, 78 T.C. 646, 649 (1982).

Respondent's answer was filed 6 weeks after service of the petition, well within the 60-day period allowed under Rule 36(a) for filing the answer.  Accordingly, petitioner is incorrect in his assertion that respondent's answer was not timely.

Respondent erred in stating in the summary judgment motion papers that the pleadings were closed on July 20, 2006.  That was the date respondent served the answer on petitioner, not the date the answer was filed.  Respondent's 1-day misstatement (which appears in a document dated February 15, 200<u>7</u>, not 200<u>6</u> as stated by petitioner in his default contention) is not a failure to comply with our Rules; it has no effect on any matters, procedural or substantive, in the instant case.

We hold that respondent is entitled to summary judgment that respondent's answer was timely filed in accordance with our Rules.

5.  <u>Section 6673 Penalty</u>

Respondent further moves that the Court impose a penalty pursuant to section 6673, contending that petitioner is using these proceedings "as a vehicle to raise frivolous arguments against the federal income tax system and simply to delay the collection process."

In pertinent part, section 6673(a)(1) authorizes the Tax Court to impose a penalty of up to $25,000, payable to the United States, whenever it appears to the Court that: (1) The taxpayer institutes or maintains a proceeding primarily for delay; (2) the taxpayer's position in the proceeding is frivolous or groundless; or (3) the taxpayer unreasonably failed to pursue the available administrative remedies.

Petitioner responds to the penalty motion as follows (reproduced literally):

4. Further the I.R.S. Failure to show why is the very fabric of freedom, the Law of the Land, the definition and limitation of power on the American Government disallowed in this INFEIORIOR lower court and is considered frivolous?

5. Further the I.R.S. Failure to show why are the Federal United States Supreme Court Cases not being allowed into the inferior lower court that has to do with the Federal "Income Tax" and the Sixteen Amendment issues? Such as the BRUSHABER v. UNION PACIFIC R. CO., 240 U.S. 1 (1916).

6. Further the I.R.S. Failure to show what exactly is Frivolous and where in the law can a state or federal Citizen of the Republic find the meaning so that it can be understood? Surely it can not be so broad that any argument or defense that is brought up by the Plaintiff (Fernando Powers) that the Internal Revenue Service disagrees with, would, or could be call frivolous, just because the I.R.S. Simply disagrees? This further proving Plaintiffs notorious Default is proper and the I.R.S.'s secret default is not and the issues at hand were decided without all the facts that were submitted to the I.R.S. <u>Settlement officer</u> unknowingly and <u>NOT an Appeals officer</u> as I believe that the law prescribes and their own admissions confirms this fact. Is it not true that one must be qualified under a job description

to be able to do a particular job within the I.R.S. with defined and limited powers created by some law or policy?  <u>Settlement officer lacked subject matter jurisdiction in an appeals hearing</u>.

7. So as a non-tax payer of the "income Tax" I simply do not understand, especially since no one from the I.R.S. Is welling to explain anything to me, so again how am I suppose to understand?

We do not try to present a comprehensive definition of "frivolous", nor do we try to present a comprehensive list of petitioner's contentions that are frivolous.  We list a few items, focusing initially on petitioner's own response to respondent's motion.

Petitioner still regards himself "as a non-tax payer of the 'income Tax'".  Petitioner's 2001 Form 1040 included a Form 1099-R and a Form W-2, which together showed more than $45,000 in income subject to tax.  Does petitioner really believe that those who annually file more than 100 million income tax returns are merely following a Pied Piper?  We draw petitioner's attention to the following warning by the Court of Appeals for the Third Circuit, the Court to which the instant case is appealable, in <u>United States v. Connor</u>, 898 F.2d 942, 944 (3d Cir. 1990):

> We take this opportunity to reiterate that wages are income within the meaning of the Sixteenth Amendment. Unless subsequent Supreme Court decisions throw any doubt on this conclusion, we will view arguments to the contrary as frivolous, which may subject the party asserting them to appropriate sanctions.

Petitioner directs our attention to <u>Brushaber v. Union Pacific R. Co.</u>, 240 U.S. 1 (1916).  The Supreme Court's opinion

in <u>Brushaber</u> strikes down every objection advanced in the case to the constitutionality of the income tax provisions of the 1913 tariff act. As best we can tell, nothing in the Supreme Court's opinion in <u>Brushaber</u> supports any contention petitioner makes in the instant case; to contend otherwise is frivolous.

In his petition, petitioner claims violations of his rights under the First, Fourth, Fifth, "6th or 7th", Eighth, Ninth, Tenth, and Thirteenth Amendments to the Constitution, as well as violations of Sections 8 (Clause 17) and 9 of Article I of the Constitution. We will not undertake to analyze each of these contentions, many of which, to the extent we can understand them, appear to have been dealt with in <u>Rowlee v. Commissioner</u>, 80 T.C. 1111, 1119-1122 (1983). In <u>Rowlee</u> we considered the taxpayer's contentions as bearing on the issue of fraud. <u>Id.</u> at 1112. In <u>Crain v. Commissioner</u>, 737 F.2d 1417, 1417-1418 (5th Cir. 1984), affg. an order of this Court, the Court of Appeals stated:

> We perceive no need to refute these arguments with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit. The constitutionality of our income tax system--including the role played within that system by the Internal Revenue Service and the Tax Court--has long been established. We affirm the dismissal of Crain's spurious "petition" and the assessment of a penalty imposed by the Tax Court for instituting a frivolous proceeding. 26 U.S.C. § 6673.

The Court of Appeals in <u>Crain</u> not only affirmed this Court's imposition of a penalty under section 6673 but also imposed its own damage award against Crain for making on appeal "a hodgepodge

of unsupported assertions, irrelevant platitudes, and legalistic gibberish." Id. at 1418. To the same effect is Sauers v. Commissioner, 771 F.2d 64 (3d Cir. 1985), affg. T.C. Memo. 1984-367.

Petitioner must understand that his successes as to parts of respondent's summary judgment motion do not insulate him from a section 6673 penalty. Indeed, we have imposed such penalties even where taxpayers have ultimately prevailed on some matters in their cases. Burke v. Commissioner, 929 F.2d 110, 115-116 (2d Cir. 1991), affg. on this issue and vacating and remanding on another issue T.C. Memo. 1989-671; Wheeler v. Commissioner, 127 T.C. 200, 212-214 (2006), affd. 521 F.3d 1289 (10th Cir. 2008). To the same effect see Harrell v. Commissioner, T.C. Memo. 1998-207, affd. without published opinion 191 F.3d 456 (7th Cir. 1999). Also, we have imposed such penalties even where taxpayers have raised some issues that were neither frivolous nor groundless, along with issues that were frivolous or groundless. Granado v. Commissioner, 792 F.2d 91, 94 (7th Cir. 1986), affg. T.C. Memo. 1985-237; Sloan v. Commissioner, 102 T.C. 137, 148-149 (1994), affd. 53 F.3d 799, 800 (7th Cir. 1995). Petitioner should also understand that some Courts of Appeals, in affirming this Court's imposition of section 6673 penalties, have added their own penalties because of frivolous arguments presented on appeal. See, e.g., Schlosser v. Commissioner, 287 Fed. Appx.

169, 171 (3d Cir. 2008), affg. T.C. Memo. 2007-297 and T.C. Memo. 2007-298.

We note that, because of our determination to deny parts of respondent's summary judgment motion, there are to be additional proceedings before this Court in the instant case. Petitioner's conduct in the additional proceedings may affect our ultimate determination regarding a section 6673 penalty. Compare <u>Wheeler v. Commissioner</u>, 127 T.C. at 214, and <u>Sloan v. Commissioner</u>, 102 T.C. at 149, with <u>Harrell v. Commissioner</u>, T.C. Memo. 1998-207. Accordingly, we will deny respondent's section 6673 motion at this point; but petitioner is warned that we will revisit the matter at a later point in our proceedings, at the Court's own motion if necessary.

To reflect the foregoing,[17]

An appropriate order will be

issued (1) granting in part and

denying in part respondent's motion

for summary judgment, and (2)

denying respondent's motion for a

section 6673 penalty.

---

[17]We have not grappled with the dispute as to the telephone hearing. Respondent's materials show Lee was to telephone petitioner. Respondent maintains Lee telephoned, but petitioner did not pick up the telephone. But the notice of determination states that it was petitioner who failed to call. Petitioner maintains he waited at the agreed-upon time, but the call never came. Some of the materials state that the agreed-upon time was 10 a.m. and some that it was 11 a.m. We note that another Court concluded that the agreed-upon time was 10:30 a.m., a time that does not appear in any of the materials the parties submitted in the instant case. At this point, the administrative record appears to be "badly muddled". See Meeh v. Commissioner, T.C. Memo. 2009-180. Depending on the outcome of the matters remaining in the instant case, this issue may be moot. It will be dealt with if and when it appears to be of any moment in the further proceedings.