T.C. Memo. 2012-267

UNITED STATES TAX COURT

MARLA J. CRITES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19156-10L.                    Filed September 17, 2012.

Marla J. Crites, pro se.

<u>Matthew D. Carlson</u>, for respondent.

MEMORANDUM OPINION

HOLMES, <u>Judge</u>:  The Commissioner says Marla Crites owes a $5,000

penalty for filing a frivolous amended return.  She had filed a perfectly normal

2005 tax return nearly three years before, but argues now that she is not a "person"

and that, even if she were, the Commissioner blew through the statute of

**[\*2]** limitations by not imposing the penalty within three years of the filing of her original return.

## Background

I.      The Returns

On April 15, 2006, Crites filed a return for her 2005 tax year. It showed about $45,000 in adjusted gross income and a tax liability of less than $4,000. More than two years later, in October 2008, Crites sent a Form 1040X, Amended U.S. Individual Tax Return, to the Commissioner. The Commissioner did not process this 1040X as a return. His reason is not hard to see: In her 1040X, Crites asked for a refund of all the 2005 tax that she had paid on the ground that her income was radically lower than she had originally reported because, she wrote:

> I was in the service of a non-Federal employer, not engaged in a "trade or business" and not an "officer of a corporation." According to the IRC sections 3401 and 3121 then, my "income" consists only of unemployment compensation and a tax refund from the previous year.

This is only a variation of the frivolous wages-aren't-income argument that tax protesters have made for years. Crites's problem is that she was a wage earner, and the school systems that employed her had withheld a portion of her wages and paid them over to the IRS. The employers didn't support her theory, and so Crites attached two different Forms 4852, Substitute for Form W-2, to her Form 1040X.

**[\*3]** On these forms Crites listed the employers' names and the amounts they had withheld. She claimed that her employers would "not issue forms correctly listing 'wages' as defined [by the] IRC."[1]

The Commissioner determined that Crites's Form 1040X failed to divulge information on which the substantial correctness of the self-assessment could be judged, and served only to "delay or impede the administration of Federal tax laws." This made Crites's Form 1040X frivolous under section 6702(a),[2] and he imposed a $5,000 penalty against her.

II.     The Levy

Crites didn't pay, and the Commissioner moved to collect by sending her a final notice that he would seize her property. Crites asked for a collection due process (CDP) hearing, and attached to her request was a reiteration of her view that wages are not taxable. She also threw in arguments that she isn't a "person" subject to levy under section 6331, that her employer-provided Forms W-2 weren't valid, that without Forms W-2 the Commissioner had insufficient information to

---

[1] Crites had attached ordinary W-2s to her normal original 2005 return. They of course showed that she did earn income.

[2] All section references are to the Internal Revenue Code in effect at all relevant times, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.

[*4] impose tax on her, that she didn't receive a timely notice of deficiency, that her assessment was not approved by a qualified "assessment officer," and other tax-protester-type arguments. The Commissioner told her to file an amended request free of frivolous arguments if she wanted a hearing.

In her second effort she took care to assure the Commissioner that her arguments were not frivolous. She claimed that she made "no Constitutional, moral, political, religious or conscientious arguments," and had no desire to delay or impede tax administration which meant, she wrote, that her arguments could not be frivolous. She also argued that:

- she was entitled to dispute her liability for the 2005 frivolous-return penalty;

- the Commissioner relied on old information which was superseded by another 1040X filed in February 2010;[3]

- the Commissioner's imposition of the frivolous-return penalty against her failed to provide facts establishing that section 6702(a) even applied to her;

- the Commissioner relied on irrelevant and invalid information when he concluded that a wage levy could apply to her; and

- the Commissioner didn't send her a valid "notice and demand for tax."

---

[3] Crites actually filed four amended returns for 2005. The Commissioner marked each of them frivolous. The notice of determination in this case arises only from the penalty that the Commissioner assessed for the first of these returns.

**[\*5]**   The Commissioner sustained the levy.  He denied any relief to Crites because she failed to propose any collection alternatives and had raised no nonfrivolous issues.  He confirmed that the requirements of any applicable law or administrative procedure had been met by the IRS.  And he told Crites that she might face fines of up to $25,000 in the future for taking frivolous positions.

Crites filed a timely petition with this court while a California resident.  The parties submitted the case for decision under Rule 122.

Discussion

Crites is correct that the Commissioner can't collect the penalty by levy without giving her written notice of his intent to do so and offering her a hearing.  At the hearing, the Appeals officer must address any relevant issues that she raises.  See sec. 6330(c)(2).  He must also "obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met."  See sec. 6330(c)(1).

I.      Issues Raised by the Taxpayer

Section 6330(c)(2) tells Appeals officers to consider issues raised by the taxpayer.  The primary issue that Crites raises under this subsection is whether she is actually liable for the frivolous-return penalty that the Commissioner imposed on her--which she can raise because she has not otherwise had a chance to dispute the

[*6] penalty.  See sec. 6330(c)(2)(B); Callahan v. Commissioner, 130 T.C. 44, 50 (2008).[4]  When the validity of the underlying tax liability is at issue in a CDP hearing, we review it *de novo*.  Sego v. Commissioner, 114 T.C. 604, 610 (2000).  This means we are not limited to looking at the administrative record or reviewing only the Appeals officer's justifications for the penalty.  We instead look to the record we have before us.  Timmons v. White, 314 F.3d 1229, 1233-34 (10th Cir. 2003).

A.     What's a Return Under Section 6702?

It used to be the district courts' job to review challenges to section 6702 penalties.  Callahan, 130 T.C. at 48.  That changed when the Pension Protection Act of 2006, Pub. L. No. 109-280, sec. 855(a), 120 Stat at 1019, amended section 6330(d)(1) to give our Court jurisdiction to review all CDP determinations regardless of the type of underlying tax liability at issue.  Sec. 6330(d)(1); Callahan, 130 T.C. at 48.  But precedents under the old allocation of jurisdiction are still relevant.

Those precedents are helpful here.  Construing her arguments as charitably as possible, it seems Crites's first argument is that her frivolous amended return

---

[4] Crites initially reserved evidentiary objections to certain exhibits.  She abandoned these by failing to address them in her opening brief.  See Rybak v. Commissioner, 91 T.C. 524, 566 (1988).

[**\*7**] wasn't a "return." Section 6702(a)--the section that the Commissioner relies on to penalize Crites--punishes only taxpayers who file "what purports to be a return."

Crites is wrong if she thinks her amended return wasn't a return under this section. She was using it to try to get a refund, and a taxpayer can file a refund claim only by sending an amended income tax *return* to the IRS. Sec. 601.105(e)(1), Statement of Procedural Rules. We have already held that amended returns submitted to obtain a refund are "returns" under section 6702. Callahan v. Commissioner, 130 T.C. at 53. And so have the circuit courts that have ruled on the issue before we got jurisdiction over cases like this. See Colton v. Gibbs, 902 F.2d 1462, 1464 (9th Cir. 1990); Sisemore v. United States, 797 F.2d 268, 270 (6th Cir. 1986).

B.     The Definition of "Person"

Crites next argues that even if her amended return counts as a return under section 6702, that section's penalties do not apply to her because she does not fall within its definition of a "person." On this point, she falls into the old tax-protester habit of confusing "includes" and "means." The Code's definition of a "person" subject to section 6702 penalties "*includes* an officer or employee of a corporation, or a member or employee of a partnership." Sec. 6671(b) (emphasis added). And

**[\*8]** the Commissioner and Crites agree that she is not an officer or employee of either a corporation or a partnership. But caselaw has firmly established that section 6671's definition of "person" *includes* officers and employees, but certainly does not *exclude* all others. United States v. Graham, 309 F.2d 210, 212 (9th Cir. 1962).[5]

II.      Issues Reviewable Under Section 6330(c)(1)

We normally don't address issues that a taxpayer didn't raise at the CDP hearing. Sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs. But there is an exception for the issues that the Code lists in section 6330(c)(1). Section 6330(c)(1) imposes a duty on Appeals officers to verify that the IRS has met the requirements of all applicable laws and administrative procedures at *every* hearing. In Hoyle v. Commissioner, 131 T.C. 197, 201-202 (2008), we held that issues that an Appeals officer *has* to consider under section 6330(c)(1) are the issues raised at the hearing, even if it's the Code and not the taxpayer that raises them. These are therefore issues that we have authority to review on appeal.

---

[5] The Code itself defines "person" as including "an individual, a trust, estate, partnership, association, company or corporation." Sec. 7701(a)(1). The Code also explains that the term "includes" "shall *not* be deemed to exclude other things otherwise within the meaning of the term defined." Sec. 7701(c) (emphasis added).

[*9] We review the Appeals officer's determination on these (c)(1) issues for abuse

of discretion.[6] Sego, 114 T.C. at 610.

## A.    Administrative Irregularities

The first (c)(1) issue that Crites raises is whether the IRS complied with

applicable administrative procedures in assessing the penalty.  She argues that the

computer transcripts that the Appeals officer used did not prove that the IRS ever

actually assessed the penalty.  This won't work:  We have consistently held that such

transcripts are sufficient unless a taxpayer can show some irregularity serious enough

to undermine their validity.  Nestor v. Commissioner, 118 T.C. 162, 166-67 (2002);

Davis v. Commissioner, 115 T.C. 35, 40-41 (2000).

Crites thinks she has found two.  She first claims that it is a violation of IRS

internal procedure to use transaction code 240 instead of penalty reference number

(PRN) 666 to show the assessment of a civil penalty on the transcripts.  The

---

[6] A decisionmaker abuses his discretion according to the Ninth Circuit
"when [he] makes an error of law * * * or rests [his] determination on a clearly
erroneous finding of fact * * * [or] 'applies the correct law to facts which are not
clearly erroneous but rules in an irrational manner.'" United States v. Sherburne,
249 F.3d 1121, 1125-26 (9th Cir. 2001) (quoting Friedkin v. Sternberg (In re
Sternberg), 85 F.3d 1400, 1405 (9th Cir. 1996), overruled on other grounds, Murray
v. Bammer (In re Bammer), 131 F.3d 788 (9th Cir. 1997) (en banc)); see also
Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 402-03 (1990).

**[\*10]** Internal Revenue Manual (IRM) does state that penalties are assessed using PRN 666. IRM pt. 20.1.10.10.1.2(1) (May 18, 2010). But even if a miscoding somehow invalidated an assessment, Crites's argument would still fail. Transaction code 240 is listed as a "miscellaneous penalty" in the IRS Transaction Codes Pocket Guide. Transaction Codes Pocket Guide, Document 11734, at 5 (Rev. 5-2012). But the Commissioner used code 240 *in conjunction* with PRN 666, and used the right code to identify the penalty on an assessment and abatement form.[7] No error--and certainly no abuse of discretion--here.

Crites next claims that the agents who made the assessment were not "assessment officers" and were therefore not authorized to make assessments. This argument is also meritless. Delegation Order 29 gives a campus director the authority to appoint assessment officers--who may further delegate the authority to make assessments. IRM pt. 3.17.63.20(1) (Oct. 1, 2005). Crites offered no evidence other than their job titles[8] suggesting that the agents who worked on her account did not have the authority to make an assessment. This meant that there

---

[7] Crites argues that there is yet another irregularity because this reference to PRN 666 reads "1040 dated 10/25/08" instead of "1040X dated 10/25/08." Her argument is frivolous: There is no mistaking that this is a reference to the amended return.

[8] The agents who worked on Crites's account had the titles "Correspondence Examination Technician" and "Supervisor Tax Examining Assistant."

[*11] were no irregularities in the computer transcripts, and we thus find that the Appeals officer properly verified the IRS's assessment of the frivolous-return penalty against Crites.

### B.    Statute of Limitations

The second (c)(1) issue here is whether the Appeals officer verified that the IRS assessed the penalty against Crites within the statute of limitations.  This is a (c)(1) issue because it is a "legal requirement" that an Appeals officer must consider at a CDP hearing.  Beeler v. Commissioner, T.C. Memo. 2009-266, 2009 WL 4059231, at *3, vacated and remanded on other grounds, 434 Fed. Appx. 41 (2d Cir. 2011); see also Hoyle, 131 T.C. at 201-02 (IRS timely mailing of a notice of deficiency is a "legal requirement" under subsection (c)(1)).

Section 6501(a) does place limits on assessments.  With certain limited exceptions not relevant here, the Commissioner must assess a tax liability within three years after a return is filed.  Sec. 6501(a).  Crites argues that because penalties are generally included within the definition of "tax", see sec. 6665(a)(2), section 6501(a) prevents the Commissioner from assessing a penalty against her under section 6702(a) more than three years from the time she filed her original return.

We disagree.  As the Commissioner observes, penalties under section 6702 do not have a readily observable statute of limitations.  The section penalizes not

**[\*12]** just frivolous "returns"--and even here Congress was careful to penalize not just returns but "what purports to be a return"--but frivolous "submissions". It would be odd if penalties keyed to "submissions" had somehow to be tied to the limitations period for tax that is supposed to be shown on a "return".

But let us assume--and here we are expressly assuming without deciding--that Crites is right that the filing date of her "return" is the key date. She had two returns, and the one that the Commissioner wants to punish her for is the amended return that she sent the IRS in October 2008. He assessed the penalty in July 2009, well within three years of her submitting it. Crites of course would prefer that we hold that the clock for penalizing her under section 6702 began to run when she filed her original return, but she cites no authority for her implicit proposition that a statute of limitations can start running before a cause of action accrues or, in a case like hers, before a taxpayer even files a sanctionable submission.

Quite apart from Crites's subtle attempt to shift our focus from "submission" to "return", her construction of section 6702(a) would be exceptionally unreasonable. Section 6702's purpose--evident from its text--is to deter frivolous submissions that gum up the IRS's work. If we held that the statute of limitations for the Commissioner to penalize frivolous amended returns began to run with the filing of the original return, section 6702 would quickly lose its deterrent effect.

**[\*13]** Tax protesters would have no disincentive to submit such frivolities once more than three years had passed from the filing date of an original return.

We therefore hold that the Appeals officer committed no error in concluding that the requirements of all applicable law and administrative procedure were met.

That leaves only the Commissioner's suggestion that we impose an additional penalty on Crites under section 6673 for even bringing this case. But this is Crites's first trip to Tax Court, and by submitting the case under Rule 122, she did save us the burden of trial. And one of her arguments, the statute-of-limitations issue as applied to frivolous *amended* returns, was one we had not yet addressed and was not itself obviously frivolous. We will therefore exercise our discretion not to sanction her under section 6673.

This time.

An appropriate order and decision will be entered.