T.C. Memo. 2021-29

UNITED STATES TAX COURT

SHEILA ANN SMITH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1312-16L.                    Filed March 10, 2021.

P submitted purported income tax returns and copies thereof, each of which reported zero gross income, zero taxable income, and zero tax. The submissions also claimed refunds for amounts withheld by employers for Social Security tax, Medicare tax, and Federal income tax. R assessed an I.R.C. sec. 6702(a) frivolous return penalty for each submission. P failed to pay the penalties, and R filed a notice of Federal tax lien (NFTL) to assist collection of the penalties. P requested a collection due process hearing in which she challenged her liability for the penalties, arguing, among other things, that wages are not taxable.

<u>Held</u>: A photocopy of an original purported return for which R has no record and on which P expects R to act in making a refund purports to be a return of income tax.

<u>Held</u>, <u>further</u>, a photocopy of a purported prior return on which no action is requested does not purport to be a return of income tax.

**[*2]** Held, further, R has met his burden of proving that four purported returns were frivolous tax returns.

Held, further, R properly assessed I.R.C. sec. 6702(a) frivolous return penalties with respect to three of those returns.

Held, further, R's NFTL filing is sustained with respect to the three purported returns.

Held, further, P is liable for an I.R.C. sec. 6673 penalty for maintaining her frivolous positions in this proceeding.

Sheila Ann Smith, pro se.

William D. Richard, Lisa M. Oshiro, and Alicia H. Eyler, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge: This case is before us to review a determination by the Internal Revenue Service (IRS) Independent Office of Appeals (Appeals)[1] sustaining respondent's filing of a notice of Federal tax lien (NFTL) in an effort to collect six unpaid penalties assessed against petitioner for filing frivolous tax

---

[1]On July 1, 2019, the IRS Appeals Office was renamed the Internal Revenue Service Independent Office of Appeals. See Taxpayer First Act, Pub. L. No. 116-25, sec. 1001(a), 133 Stat. at 983 (2019). Some of the events in this case predate that renaming. We use the term "Appeals" without distinction to refer to the office both before and after the name change.

**[*3]** returns for her tax years 2008 through 2011. We will sustain the determination in part, with respect to three of the six assessed penalties. We will also impose on petitioner an additional penalty for advancing frivolous positions in this proceeding.

All section references are to the Internal Revenue Code of 1986, as amended. All dollar amounts are rounded to the nearest dollar.

FINDINGS OF FACT

The parties have stipulated certain facts and the authenticity of certain documents. The facts stipulated are so found, and documents stipulated are accepted as authentic. Petitioner lived in Washington State when she filed the petition.

Purported Tax Returns and Penalties Assessed

-- 2008 Tax Year

In June 2012, respondent notified petitioner's husband, George J. Smith, that respondent had no record of receiving his 2008 tax return. In response, on June 26, 2012, petitioner and her husband (Smiths) sent to respondent a letter (June 26 letter) claiming that they had sent "an original 2008 return with proper forms and statements * * * to the Fresno Service Center". They added: "As you have lost or misplaced my return, please find enclosed copies of the original filing of my 2008

**[*4]** 1040 Return and filed supporting documents".  That copy (2008 Form 1040 copy No. 1) reproduces a 2008 Form 1040, U.S. Individual Income Tax Return, dated April 14, 2009, claiming joint filing status and signed by both Smiths under penalty of perjury (2008 Form 1040).  The 2008 Form 1040 copy No. 1 reports an overpayment of 2008 income tax, as follows:

| | |
|---|---|
| Total income | -0- |
| Adjusted gross income | -0- |
| Total tax | -0- |
| Federal income tax withheld | $5,614 |
| Overpayment and refund requested | 5,614 |

By the June 26 letter, the Smiths demanded "a full and complete refund within 30 days" of the overpayment evidenced by the 2008 Form 1040 copy No. 1. Besides the 2008 Form 1040 copy No. 1, the Smiths enclosed with the June 26 letter copies of three Forms 4852, Substitute for Form W-2, Wage and Tax Statement, or Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., and two corrected Forms 1099-MISC, Miscellaneous Income.  One Form 4852 is for Mr. Smith, naming the employer or payer as Corporate Express Office Products, Inc. (Corporate Express). It shows:

| | |
|---|---|
| Wages, tips, and other compensation | -0- |
| Social Security wages | -0- |
| Medicare wages and tips | -0- |
| Social Security tips | -0- |
| Federal income tax withheld | $1,309 |
| State income tax withheld | -0- |
| Local income tax withheld | -0- |
| Social Security tax withheld | 3,096 |
| Medicare tax withheld | 724 |

A second Form 4852 is for petitioner, naming the employer or payer as Gregory Wong--New York Life Insurance (N.Y. Life). The third Form 4852 is for petitioner, naming the employer or payer as Alan McGaw & Associates. Those two forms are similar to the first Form 4852 in that they show zero for the first four items and the sixth and seventh items. They show various taxes withheld.

The two corrected Forms 1099-MISC are for petitioner, one showing the payer as Microsoft Corp. (Microsoft) and reporting "Other income" as zero and the second showing the payer as World Ventures Holdings, LLC, and reporting "Nonemployee compensation" of zero. Petitioner added on the page displaying each corrected Form 1099-MISC the following statement.

[*6]  This Statement includes the above representation of a Form 1099-MISC.  The above form is not intended to represent a corrected 1099-MISC filed by the party identified above as the "PAYER".

The correcting 1099-MISC above is submitted to "REBUT" a document known to have been submitted by the party identified above as "PAYER" which erroneously alleges a payment or payments to the party identified as "RECIPIENT" of "gains, profits or income" made in the course of a "trade or business".

Neither the "PAYER" nor the "RECIPIENT" engaged in any transaction(s) with each other that were made in the course of a "trade or business" as those terms are defined.  This correcting form ends any such presumption.

Under the penalty of perjury, I declare that I have examined this statement and to the best of my knowledge and belief, it is true, correct, and complete.

During 2008, Mr. Smith worked for Corporate Express and received money in exchange for his services.  Petitioner worked for Alan McGaw, N.Y. Life, Microsoft, and World Ventures Holdings, LLC, and, from each, received money in exchange for her services.

On September 11, 2012, respondent sent petitioner a Letter 3176C informing her that the 2008 Form 1040 copy No. 1 claimed a frivolous position and giving her the opportunity to correct the submission.  The letter warned her that, if no correction was made, a penalty under section 6702, Frivolous Tax Submissions, would be assessed.  In response, on September 28, 2012, the Smiths

**[*7]** sent respondent a letter disagreeing that their 2008 return position was frivolous and again demanding a refund of their claimed 2008 tax overpayment. The letter enclosed another copy of the 2008 Form 1040 (2008 Form 1040 copy No. 2). The two copies of the 2008 Form 1040 are identical. Petitioner did not submit a corrected 2008 return to respondent.

The record contains a Form 8278, Assessment and Abatement of Miscellaneous Civil Penalties, dated December 10, 2012, proposing the assessment of a $5,000 section 6702(a) penalty against petitioner with respect to the 2008 Form 1040 copy No. 1. The form contains blocks for the "Originator", "Manager", and "Supervisor". The Originator block is signed "Tara C. Durrant", the Manager block contains the printed name "Sherri Holcomb", and the Reviewer block is signed "Sherri Holcomb". On December 10, 2012, respondent assessed the penalty.[2]

The record contains a Form 8278 dated October 3, 2012, proposing the assessment of a $5,000 section 6702(a) penalty against petitioner with respect to the 2008 Form 1040 copy No. 2. The Originator block is signed "Tara C.

[2]Notwithstanding that petitioner and Mr. Smith made joint returns for the five years at issue, we address only sec. 6702(a) penalties assessed against petitioner. We have no information whether respondent assessed sec. 6702(a) penalties against Mr. Smith.

**[*8]** Durrant", the Manager block contains the printed name "Sherri Holcomb", and the signature in the Reviewer block is "Darrell Owen". On February 11, 2013, respondent assessed the penalty.

-- 2009 Tax Year

On or about November 7, 2012, respondent received from the Smiths an original Form 1040X, Amended U.S. Individual Income Tax Return (2009 Form 1040X). On that form, signed by both Smiths under penalty of perjury, they report the following:

| | |
|---|---|
| Correct amount of adjusted gross income | -0- |
| Correct amount of tax | -0- |
| Correct amount of withholding | $5,719 |
| Original return overpayment | 2,035 |
| Total refund requested | 3,684 |

The Smiths attached to the 2009 Form 1040X two Forms 4852, both for Mr. Smith: one for Staples Contract & Commercial (Staples) and the second for Corporate Express. The entries on those Forms 4852 are similar to the entries on the Forms 4852 accompanying the copies of the 2008 Form 1040 (showing no items of income and various withholdings).

**[*9]** A letter from the Smiths accompanying the 2009 Form 1040X explains that the Forms 4852 are necessary because

> the companies provided W-2 which erroneously alleged payments of Internal Revenue Code * * * sections 2121 [sic section 3121, perhaps] & 3401 wages that are hereby disputed.
>
> They have listed payments as "wages" as defined in the Internal Revenue Code * * * sections 3401(a) and 3121(a). I am rebutting their claim, stating that I am a private-sector citizen (non-federal employee_ employed by a private-sector company (non-federal entity) as defined in 3401(c)(d). I am not employed in a "trade or business" nor am I an "officer of a corporation". * * *

During 2009, Mr. Smith worked for both Corporate Express and Staples and received money in exchange for his services rendered.

On or about March 21, 2013, respondent sent petitioner Letter 3176C informing her that the 2009 Form 1040X claimed a frivolous position and giving her the opportunity to correct the submission. Petitioner did not submit a corrected 2009 Form 1040X.

The record contains a Form 8278 dated July 22, 2013, proposing the assessment of a $5,000 section 6702(a) penalty against petitioner with respect to the 2009 Form 1040X. The Originator block is signed "Tara Durrant", the Manager block contains the printed name "Joan Evans", and the Reviewer block is signed "Joan Evans". On July 22, 2013, respondent assessed the penalty.

**[*10]** -- 2010 and 2011 Tax Years

Stipulated exhibits demonstrate that the pattern for 2010 and 2011 was similar to the pattern for 2008. For 2010, respondent received from the Smiths a Form 1040 (2010 Form 1040) dated April 17, 2012, and signed by both of them under penalty of perjury. On August 8, 2012, respondent sent the Smiths a Letter 3176C with respect to the 2010 Form 1040. The Smiths did not submit a corrected 2010 Form 1040, but, instead, in September 2012, they sent respondent a photocopy of the 2010 Form 1040 (2010 Form 1040 copy). For 2011, respondent received from the Smiths a Form 1040 (2011 Form 1040) dated April 14, 2012, and signed by both of them under penalty of perjury. On March 13, 2013, respondent sent the Smiths a Letter 3176C with respect to the 2011 Form 1040. He received no response.

Both the 2010 and 2011 Forms 1040 and the 2010 Form 1040 copy report no items of income but do report withheld taxes and request refunds of the withheld amounts. All are accompanied by Forms 4852 with zero or no amount shown in all income categories and a letter explaining how payers had mischaracterized as wages amounts paid to one or the other of them that were not wages.

[*11] During 2010, Mr. Smith worked for Staples and petitioner worked for Voters for Dick Muri, and both received money in exchange for their services. During 2011, Mr. Smith worked for Staples and received money in exchange for his services. Petitioner provided services to Microsoft and received payment from it.

The record contains three Forms 8278, dated March 13, 2014, each proposing the assessment of a $5,000 section 6702(a) penalty against petitioner, one with respect to the 2010 Form 1040, the second with respect to the 2010 Form 1040 copy, and the third with respect to the 2011 Form 1040. All contain the printed name "Mrs. McNeeley" in the Originator block, and each contains the printed name "Rochelle Nichols" in the Manager block and the signature "Rochelle Nichols" in the Reviewer block. On April 7, 2014, respondent assessed the three $5,000 penalties.

The Determination

In February 2015, respondent filed the NFTL and sent petitioner notice of the filing and of her right to a so-called collection due process (CDP) hearing pursuant to section 6320. In response, petitioner timely filed with respondent a Form 12153, Request for a Collection Due Process or Equivalent Hearing. Petitioner explained in a letter attached to the form that she should not be subject

[*12] to collection action because she is not an officer, employee, or elected official of the United States or the District of Columbia. Moreover, she continued, there was no tax liability to be collected because, for every year questioned by respondent, she had filed a Form 1040 and was expecting a refund.

Petitioner's Form 12153 was assigned to Appeals Settlement Officer (SO) Poonam Sharma. By a series of letters, SO Sharma scheduled a telephone conference with petitioner for September 24, 2015. Petitioner responded, asking that a new hearing date be set at least 60 days thereafter and that the hearing be conducted by correspondence. SO Sharma answered that she would resolve petitioner's case on the basis of petitioner's written submission, and she invited petitioner to provide her with a proposal or some resolution for the assessed penalties or with any other information that petitioner wanted to provide. She warned petitioner that, if she did not receive petitioner's submission by October 12, 2015, she would make her determination using the information already in the file.

On October 11, 2015, petitioner sent a letter to SO Sharma stating that the IRS had not answered her requests for clarification as to the frivolous nature of her returns. She did not propose any collection alternative. She did, however, disagree with and challenge her liability for any section 6702 penalty. She argued,

**[\*13]** among other things, that the returns she submitted did contain information on which the substantial correctness of her self-assessment could be judged and did not contain information that, on its face, indicated that her self-assessment was substantially incorrect. Those claims, if true, would defeat application of the frivolous return penalty imposed by section 6702(a). See infra sec. II.B.

Shortly thereafter, SO Sharma determined that Appeals should sustain the filing of the NFTL, on the basis of her review of the case file, case history, and various transcripts of account. Her case activity record states that she verified from computer transcripts that (1) assessments were properly made for the penalties and years in question, (2) notice and demand for payment were properly mailed to petitioner's last known address, and (3) there was a balance due when the NFTL was requested. By letter dated December 11, 2015, an Appeals team manager informed petitioner that the filing of the NFTL was sustained.

The Petition

Petitioner timely petitioned for us to review the determination. She asks to have the NFTL withdrawn and the assessed section 6702 penalties abated. As best we understand petitioner's grounds, they are that her (i.e., the Smiths') returns are accurate and take no frivolous position. She also recites a variety of arguments that respondent cannot challenge her returns or that compensation for services

[*14] cannot be taxed. Relying on the claim that any Federal tax on the right to engage in economic activity and enjoy the benefits therefrom is a direct tax that must be apportioned, she argues that "only economic activities (or the gains therefrom) within a certain, limited class [excluding income from labor] are taxable by the feds as 'income'." Moreover, she claims that, before respondent can assess a section 6702 penalty, he is "required" by section 6020(b) and the augmenting regulations "to prepare and sign a substitute return", which he did not do.

Trial and Briefing

Trial in this case was held in Seattle, Washington, in May 2017. Briefing was completed in November 2017. In December 2017, the Court issued a report in Graev v. Commissioner, 149 T.C. 485 (2017), supplementing and overruling in part 147 T.C. 460 (2016). In Graev v. Commissioner, 149 T.C. at 493, we held that, in cases in which the Commissioner bears the burden of production with respect to penalties under section 7491(c), that burden includes evidence of written supervisory approval of penalties as required by section 6751(b)(1). And that section requires the approval be by the "immediate supervisor" of the individual making the "initial determination" of the penalty.[3]

---

[3]The section continues "or such higher level official as the Secretary may designate." Sec. 6751(b)(1). The Secretary has made no such designation.

[*15] Subsequently, petitioner moved that the Court compel respondent to provide evidence of proper approval of the section 6702(a) penalties, "showing that an Immediate Supervisor approved them in writing prior to the penalties being asserted upon petitioner." As a consequence, we offered both parties the opportunity to file supplemental briefs addressing whether respondent had met his burden of production. Petitioner filed a supplemental brief, arguing that the evidence in the record (i.e., the various Forms 8278) was inadequate to carry respondent's burden.

## Remand

In July 2020, we remanded this case to Appeals for a supplemental hearing to comply with the verification requirements of section 6330(c)(1). Section 6330(c)(1) requires the settlement officer at a CDP hearing to obtain from the Secretary verification that the requirements of any applicable law or administrative procedure have been met. SO Sharma's case activity record evidences that she had verified from computer transcripts (1) an assessment of the penalties, (2) notice and demand for payment, and (3) that there was a balance due. It is silent with respect to section 6751(b)(1) compliance. Also, the Forms 8278 in evidence (Forms 8278) were not among the documents stipulated to constitute the administrative record in this case. Because our abuse-of-discretion review is

**[\*16]** limited to the administrative record, we could not take them into account in determining whether SO Sharma verified section 6751(b)(1) compliance. Finally, nothing on any of the forms identifies the individual signing the form as the "immediate supervisor" of the originator of the form, whom we presumed to be the individual making the initial determination of assessment of the penalty.

Appeals accorded petitioner a supplemental hearing and Appeals Team Manager Brian J. Hefty sent petitioner a Supplemental Notice of Determination Concerning IRS Collection Actions under Internal Revenue Code Sections 6320 or 6330 (supplemental determination). The principal holding of the supplemental determination is that Appeals would sustain the NFTL but abate the penalty assessed with respect to the 2008 Form 1040 copy No. 2. That determination followed the recommendation of SO Steve Lerner to whom the remand had been assigned. To comply with the remand instruction to verify compliance with the section 6751(b)(1) written supervisory approval requirements, SO Lerner emailed copies of the Forms 8278 to Mss. Holcomb, Evans, and Nichols, asking whether, when they signed the forms, they were directly managing the originator of the form. Someone forwarded SO Lerner's email to Andrea Ipson, IRS Frivolous Return Program Coordinator. SO Lerner received replies form Mss. Evans and

**[*17]** Ipson.  The following chart shows relevant information regarding the Forms

8278 (the signatures underscored).

| Purported return | Letter 3176C sent | Form 8278 signed | Originator | Manager | Reviewer | Penalty assessed |
|---|---|---|---|---|---|---|
| 2008 Form 1040 copy No. 1 | 9/11/12 | 12/10/12 | Tara C. Durrant | Sherri Holcomb | Sherri Holcomb | 12/10/12 |
| 2008 Form 1040 copy No. 2 | | 1/19/13 | Tara C. Durrant | Sherri Holcomb | Darrel Owen | 2/11/13 |
| 2009 Form 1040X | 3/21/13 | 7/22/13 | Tara C. Durrant | Joan Evans | Joan Evans | 7/22/13 |
| 2010 Form 1040 | 8/8/12 | 3/13/14 | Mrs. McNeeley | Rochelle Nichols | Rochelle Nichols | 4/7/14 |
| 2010 Form 1040 copy | | 3/13/14 | Mrs. McNeeley | Rochelle Nichols | Rochelle Nichols | 4/7/14 |
| 2011 Form 1040 | 3/13/13 | 3/13/14 | Mrs. McNeeley | Rochelle Nichols | Rochelle Nichols | 4/7/14 |

Ms. Ipson replied to SO Lerner's email as follows:

I have reviewed the F8278's as you requested.  Tara Durrant was the initiating employee for 2008 and 2009.  Sherri Holcomb, Joan Evans and Darrell Owen were the department managers and direct

[*18] supervisors of Tara Durrant at the time of each signature. Rochelle Nichols was the direct supervisor of Mrs. McNeeley at the time of signature for the 2010 and 2011 penalty forms.

Ms. Evans replied that, when, on July 22, 2013, she signed the Form 8278 with respect to petitioner's 2009 Form 1040X, she was Ms. Durrant's direct manager.

With respect to the 2008 Form 1040 Copies Nos. 1 and 2, SO Lerner concluded:

> I am taking the position that the originating employee can only have one immediate manager/direct supervisor, and that therefore the first 2008 $5K penalty [with respect to the 2008 Form 1040 copy No. 1] is valid because the Form 8278 was signed by the originator's immediate supervisor, but that the second 2008 $5K penalty [with respect to the 2008 Form 1040 copy No. 2] is not valid because the Form 8278 was not signed by the originator's immediate supervisor.

With respect to the 2009 Form 1040X, SO Lerner concluded: "I have verified compliance with section 6751(b)(1)[;] * * * Joan Evans, the employee who approved the penalty, was the direct supervisor (manager) of Tara Durrant, the employee who proposed the penalty."

With respect to the 2010 Form 1040 and the 2010 Form 1040 copy SO Lerner concluded: "Based on FRP Coordinator Andrea Ipson's * * * email both 2010 Forms 8278 are valid because they were signed by [Rochelle Nichols,] the

[*19] originator's immediate supervisor. SO Lerner concluded accordingly with

respect to the 2011 Form 1040.

Appeals Team Manager Hefty concluded the supplemental determination as

follows.

> Legal and Procedural Requirements
> SO Lerner verified that the requirements of any applicable law or
> administrative procedure were met and that IRS records confirmed
> the proper issuance of the notice and demand, NFTL filing, and
> notice of a right to a CDP hearing.
>
> SO Lerner verified that penalty assessment was properly made for
> three of the four periods listed [on] the CDP notice and that notice
> and demand for payment was mailed to Ms. Smith's last known
> address. SO Lerner verified that there was a balance due when the
> NFTL was filed.
>
> SO Lerner had no prior involvement with respect to the specific
> penalty periods either in Appeals or Compliance.
>
> SO Lerner reviewed the Collection file, IRS records and information
> provided by Ms. Smith. SO Lerner's review confirmed that for three
> of the four penalty periods the IRS followed all legal and procedural
> requirements, and that the actions taken or proposed were appropriate
> under the circumstances.
>
> Issues on Unpaid Liability
> Addressed above.
>
> Balancing Efficient Tax Collection with Concern Regarding
> Intrusiveness
> SO Lerner balanced the need for efficient tax collection with
> Ms. Smith's concern that the action taken be no more intrusive than
> necessary. SO Lerner recommended abatement of $5,000 of the

**[\*20]** $30,000 penalty assessments subject to the NFTL. Since $25,000 of the $30,000 penalty assessments remained, and since Ms. Smith proposed no collection alternatives, SO Lerner sustained the NFTL filing.

## OPINION

### I. Introduction

#### A. Preliminary Matters

We review Appeals' determination to sustain the filing of an NFTL pursuant to sections 6320(c) and 6330(d)(1). Where the existence or amount of the underlying tax liability is properly at issue, we review the determination regarding the underlying tax liability de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). We review all other determinations for abuse of discretion. Id. at 182; Patrick's Payroll Servs., Inc. v. Commissioner, T.C. Memo. 2020-47, at \*10, aff'd, ___ F. App'x ___, 2021 WL 811497 (6th Cir. Mar. 3, 2021).[4] The phrase

---

[4]In Robinette v. Commissioner, 123 T.C. 85, 95 (2004), rev'd, 439 F.3d 455 (8th Cir. 2006), we held that "when reviewing for abuse of discretion under section 6330(d), we are not limited by the Administrative Procedure Act \* \* \* and our review is not limited to the administrative record." The Court of Appeals for the Ninth Circuit, however, has concluded that, when in a sec. 6330 case we review for abuse of discretion, the record rule applies. See Keller v. Commissioner, 568 F.3d 710, 718 (9th Cir. 2009), aff'g in part T.C. Memo. 2006-166, and aff'g in part, rev'g in part decisions in related cases. Under sec. 7482(b)(1)(G), appeal in this case would evidently lie in the Court of Appeals for the Ninth Circuit, and in this case we therefore follow that court's opinion. See

(continued...)

[*21] "underlying tax liability" includes the tax deficiency, any additions to tax or penalties, and statutory interest. Katz v. Commissioner, 115 T.C. 329, 339 (2000); Patrick's Payroll Servs., Inc. v. Commissioner, at *10-*11. In reviewing for abuse of discretion, we must uphold Appeals' determination unless it is arbitrary, capricious, or without sound basis in fact or law. See, e.g., Murphy v. Commissioner, 125 T.C. 301, 308, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). When this Court remands a case to Appeals and it comes back to us after a supplemental determination is issued, we review the supplemental determination. See Hoyle v. Commissioner, 136 T.C. 463, 468 (2011), supplementing 131 T.C. 197 (2008); Kelby v. Commissioner, 130 T.C. 79, 86 (2008).

B.    Issues for Decision

Petitioner assigns error to the determination on the grounds that, because she is not liable for the frivolous return penalties that respondent assessed, he filed the NFTL in error. She does not argue that she was entitled to a collection alternative, see sec. 6330(c)(2)(A)(iii), nor, with one exception, does she argue that Appeals failed to verify compliance with all applicable laws or administrative procedures, see sec. 6330(c)(1), (3)(A). She does claim, however, that respondent

---

[4](...continued)
Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971).

[*22] cannot collect any of the assessed penalties because he failed to comply with the written supervisory approval requirement found in section 6751(b)(1) before he assessed the penalties. We limit our review of Appeals' determination to issues raised by the taxpayer. See Lunsford v. Commissioner, 117 T.C. 183, 188 (2001).

Because petitioner had no opportunity to challenge her liability for the penalties before she requested a CDP hearing, respondent accepts that she was within her rights to challenge them during her CDP hearing and that, because she did challenge them (albeit unsuccessfully), she may challenge them in this proceeding. We agree. See sec. 6330(c)(2)(B); Gluck Irrevocable Tr. v. Commissioner, 154 T.C. 259, 269 (2020); sec. 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs. Respondent concedes the penalty assessed with respect to the 2008 Form 1040 copy No. 2. We accept that concession. Otherwise respondent denies that he erred in assessing the remaining five penalties or in issuing the NFTL. He denies that he failed to obtain the required written supervisory approval before assessing those five penalties.

The parties present us two issues for decision: first, whether the five remaining purported returns were frivolous so as to merit respondent's assessments of five section 6702(a) penalties for filing frivolous returns, and second, whether respondent unlawfully made those assessments because, before making them, he

[*23] failed to obtain the written supervisory approval required by section 6751(b)(1). The first issue is a challenge to the existence of petitioner's underlying liability for the penalties, which we review de novo. See sec. 6330(c)(2)(B); Kestin v. Commissioner, 153 T.C. 14, 24 (2019). Respondent bears the burden of proving that the conditions of the penalty are satisfied. See sec. 6703(a); Kestin v. Commissioner, 153 T.C. at 22. The second issue does not go to the merits of the penalties but rather raises the question of whether the NFTL was improperly issued because respondent failed to take a necessary administrative step before he assessed the penalties to which the NFTL related. See secs. 6303, 6320-6323, 6751(b)(1). In exercising our jurisdiction under section 6330(d)(1) to review an Appeals determination to sustain a collection action, we have said that "compliance with section 6751(b)(1) is an issue of 'verification' under section 6330(c)(1)". Laidlaw's Harley Davidson Sales, Inc. v. Commissioner, 154 T.C. 68, 76 n.8 (2020); see also Kestin v. Commissioner, 153 T.C. at 23. We have also said: "We review the verification requirement for abuse of discretion." Blackburn v. Commissioner, 150 T.C. 218, 223 (2018); see also Shepherd v. Commissioner, T.C. Memo. 2020-45, at *13.[5]

---

[5]In Kestin v. Commissioner, 143 T.C. 14, 28 (2019), a CDP case in which the standard of review for the verification requirement was abuse of discretion but

(continued...)

**[*24]** II.     Section 6702 Frivolous Return Penalty

A.     Introduction

Section 6702(a) imposes a civil penalty of $5,000 upon a person who files a frivolous tax return.  The penalty applies if three conditions are met.  First, the filer must have filed a document that "purports to be a return of a tax imposed by" the Internal Revenue Code.  Second, the purported return must be a document that either "does not contain information on which the substantial correctness of the self-assessment may be judged" or "contains information that on its face indicates that the self-assessment is substantially incorrect".  Sec. 6702(a)(1).  Third, the filer's conduct must either be "based on a position which the Secretary has identified as frivolous" or must "reflect[ ] a desire to delay or impede the administration of Federal tax laws."  Sec. 6702(a)(2).  Congress directed the

---

[5](...continued)
the scope of review may not have been the administrative record, see Robinette v. Commissioner, 123 T.C. at 95, we relied on the evidence at trial to conclude that the Commissioner had carried his burden of production under sec. 7491(c) to show compliance with sec. 6751(b)(1).  In Kapp v. Commissioner, T.C. Memo. 2019-84, at *95-*96, we concluded on the basis of the administrative record that the Commissioner had satisfied the verification requirements because he had "met his burden of production under section 6751(b)(1)."  It is not clear that "burden of production"--i.e., the Commissioner's obligation to produce evidence making out a prima facie case, see, e.g., Ball v. Commissioner, T.C. Memo. 2020-152, at *12--plays any role if the scope of review is not de novo.

**[*25]** Secretary to prescribe and periodically revise "a list of positions which * * *

[he] has identified as being frivolous".  Sec. 6702(c).

Unlike the companion penalty for specified frivolous submissions provided

for in section 6702(b), Congress did not in specifying a penalty for frivolous tax

returns provide the return filer the opportunity to withdraw the frivolous return

and, by such withdrawal, avoid the penalty.  See sec. 6702(b)(3); Kestin v.

Commissioner, 153 T.C. at 30.  Nevertheless, by administrative action, the

Commissioner has accorded filers of frivolous returns a similar opportunity.[6]  That

was the opportunity accorded petitioner by respondent's Letters 3176C.

If a person files multiple frivolous returns for a single year, the

Commissioner may assess multiple frivolous return penalties.  See Grunsted v.

Commissioner, 136 T.C. 455, 456-457, 460 (2011) (sustaining two penalties for

2002 and two penalties for 2003 on account of two "substantially identical"

purported tax returns for each year); Whitaker v. Commissioner, T.C. Memo.

2017-192, at *6, *11-*12 (sustaining two penalties for identical returns with

different attachments but accepting Commissioner's concession with respect to

---

[6]See, e.g., Internal Revenue Manual pt. 4.10.12.5.1(5) (Sept. 5, 2014) ("Note:  IRC 6702 does not require notification to a taxpayer that the position claimed on a return is frivolous, but notification should be provided as a matter of policy.").

**[\*26]** third return submitted in response to Commissioner's erroneous claim that he had not received first return). Nevertheless, a photocopy of a return marked as a copy and on which a taxpayer does not request action "does not 'purport to be a return'." Kestin v. Commissioner, 153 T.C. at 26 (upholding assessment of section 6702 penalty on account of taxpayer's original frivolous amended return but not on six "reference" copies received by Commissioner). The frivolous return penalty can be assessed against each filer of a joint return. See, e.g., O'Brien v. Commissioner, T.C. Memo. 2012-326, at \*4 n.5.

### B. The Three Conditions Satisfied

#### 1. First Condition

We first inquire whether the remaining five submissions for which respondent assessed penalties (i.e., other than the 2008 Form 1040 copy No. 2, for which respondent concedes the penalty) purport to be income tax returns. See sec. 6702(a)(1). Petitioner subscribed the 2009 Form 1040X, the 2010 Form 1040, and the 2011 Form 1040, each of which reported zero gross income, zero taxable income, and zero tax. By those forms, petitioner (and her husband) sought refunds of amounts withheld by employers for Social Security and Medicare taxes in addition to amounts withheld for the payment of Federal income tax. And while the 2009 Form 1040X is not petitioner's first attempt at filing a 2009 return, it is

[*27] clear that the section 6702 frivolous return penalty can attach to an amended return. See Kestin v. Commissioner, 153 T.C. 14; Crites v. Commissioner, T.C. Memo. 2012-267, at *7. The facts are sufficient for us to find, and we do find, that the 2009 Form 1040X, the 2010 Form 1040, and the 2011 Form 1040 purport to be income tax returns. See, e.g., Callahan v. Commissioner, 130 T.C. 44, 53 (2008) ("[D]ocuments that are filed to obtain a refund of tax have consistently been held to be purported returns."); O'Brien v. Commissioner, at *13-*14.

We also find that the 2008 Form 1040 copy No. 1 purported to be an income tax return. The Smiths sent respondent that copy when Mr. Smith learned that respondent had no record of the 2008 Form 1040. The June 26 letter (1) states petitioner's assumption that the 2008 Form 1040 had been lost or misplaced, (2) represents the 2008 Form 1040 copy No. 1 to be a copy of the 2008 Form 1040, and (3) asks for "a full and complete refund within 30 days" of the overpayment evidenced by that copy. Undoubtedly, petitioner understood that respondent would make no refund of any overpaid 2008 tax without a 2008 tax return, and we assume that she sent him the 2008 Form 1040 copy No. 1 to obtain such a refund. Because the copy was presented to respondent in order to induce him to make a refund of tax, it purported to be a return of tax. See, e.g., Callahan v. Commissioner, 130 T.C. at 53. But see Seaview Trading, LLC v.

[*28] Commissioner, T.C. Memo. 2019-122, at *11 (holding that a partnership, whose agents sent copies of a return to the IRS to evidence that it had previously filed the return, did not intend its sending of the copies to constitute the filing of a return). Kestin v. Commissioner, 153 T.C. 14, is distinguishable because the 2008 Form 1040 copy No. 1 was not merely a reference copy of a prior return, marked as such and on which petitioner expected no action. See id. at 26, 28. While it is true that the 2008 Form 1040 copy No. 1 lacked original signatures (being merely a copy of the 2008 Form 1040), that is not a fatal omission in the context of the section 6702(a) penalty because the statute imposes a penalty on a document that merely "purports to be a return" of tax. See id. at 25-26.

The 2010 Form 1040 copy was identical to the 2010 Form 1040. With respect to the 2010 Form 1040 copy, we rely on our Opinion in Kestin v. Commissioner, 153 T.C. 14. In Kestin, in addition to an original Form 1040X, the taxpayer included photocopies of that return, marked as copies, with letters that she sent the Commissioner. In those letters, she identified the photocopies as copies, and she did not request action on the photocopies themselves but asked the IRS to honor and process the original Form 1040X. Id. at 19. The Commissioner assessed penalties not only with respect to the original Form 1040X but also with respect to the copies. We concluded: "A photocopy so marked and so explained

[*29] does not 'purport to be a return'." Id. at 26. In the present case, although the 2010 Form 1040 copy was not marked as a copy, the accompanying letter makes clear that it was a copy and was intended to reinforce petitioner's initial purported return, claiming a refund, rather than intended to initiate a new action for refund. As in Kestin, we find that the copy, i.e., the 2010 Form 1040 copy, did not purport to be an income tax return and is not subject to a penalty under section 6702(a). See also Seaview Trading, LLC v. Commissioner, T.C. Memo. 2019-122.

2.      Second Condition

The second condition respondent must demonstrate to have been satisfied is that the purported return either (1) lacks sufficient information to judge the substantial correctness of the self-assessment or (2) contains information that, on its face, indicates a substantially incorrect self-assessment. See sec. 6702(a)(1). As we have found, the documents petitioner submitted as tax returns reported zero adjusted gross income, zero taxable income, and zero tax and sought refunds of withheld amounts. But the Forms 4852 petitioner submitted name employers for both petitioner and Mr. Smith, and petitioner concedes that the Smiths received from those employers moneys in exchange for their services. Petitioner also submitted Forms 1099-MISC to rebut Forms 1099-MISC submitted by what she describes as "PAYER[S] erroneously alleg[ing] * * * payments of 'gains, profits or

[*30] income'".  Petitioner explained that the payers had mischaracterized as wages amounts paid to one or the other of the Smiths that were not wages because each Smith was a "private-sector citizen (non-federal employee_employed by a private-sector company (non-federal entity)".  Petitioner's assertions that she and her husband received no wages because they were not Federal employees are patently erroneous.  Considered as a whole (with attachments) the returns indicated that the self-assessments were substantially incorrect.  See, e.g., Blaga v. Commissioner, T.C. Memo. 2010-170, 2010 WL 3023961, at *6.

### 3.  Third Condition

The third and final condition respondent must prove is that petitioner's conduct satisfying the second condition was based on a position that the Secretary had identified as frivolous or that reflects a desire to delay or impede the administration of Federal tax laws.  See sec. 6702(a)(2).

Section 6702(c) directs the Secretary to prescribe and periodically revise a list of positions that he has identified as frivolous.  Notice 2010-33, 2010-17 I.R.B. 609, lists positions the Secretary has identified as frivolous.[7]  Section 1 of the notice provides that positions that are the same as or similar to the positions

---

[7]The notice is effective for submissions made and issues raised after April 7, 2010.  Notice 2010-33, sec. IV, 2010-17 I.R.B. 609, 612.

[*31] listed in the notice are identified as frivolous for purposes of the section 6702(a) frivolous return penalty. Section III(1)(e) of the notice identifies as frivolous the position that "[a] taxpayer has an option under the law to * * * elect to file a tax return reporting zero taxable income and zero tax liability even if the taxpayer received taxable income during the taxable period for which the return is filed, or similar arguments described as frivolous in Rev. Rul. 2004-34, 2004-1 C.B. 619."

Rev. Rul. 2004-34, supra, describes as a frivolous position a "zero return position" taken by some taxpayers. The claim is that a taxpayer may avoid tax (and perhaps obtain a refund of taxes withheld) by filing a return showing no income and no tax liability even though the taxpayer has wages, salary, or other income. Id. Such taxpayers, the notice continues, "typically rely on one or more frivolous arguments to support the position that wage or other income is not subject to tax." Id.

That description fits petitioner perfectly. During each year from 2008 through 2011, petitioner and her husband were employed and received compensation for their services, yet they failed to report that compensation as income on the purported returns on the grounds that wages are not income. Section 61(a) broadly includes as an item of gross income "[c]ompensation for

[*32] services, including fees, commissions, fringe benefits, and similar items".

Petitioner's claim that wages are not income is patently frivolous. See, e.g., Olson v. Commissioner, 760 F.2d 1003, 1005 (9th Cir. 1985) (per curiam); Smith v. Commissioner, T.C. Memo. 2019-111, at *9-*11; Briggs v. Commissioner, T.C. Memo. 2016-86, at *10.

Likewise petitioner's argument that the Federal income tax, when applied to income from labor, is a direct tax that must be apportioned is frivolous. See, e.g., United States v. Gerads, 999 F.2d 1255, 1256-1257 (8th Cir. 1993) (per curiam) (stating "we have rejected, on numerous occasions, the tax-protestor argument that the federal income tax is an unconstitutional direct tax that must be apportioned" and granting Government's motion for sanctions for frivolous appeal).

Finally, petitioner is mistaken, and her argument is frivolous, that, before respondent can assess a section 6702 penalty, he is required to prepare and sign a substitute for return. Numerous cases are to the contrary. See, e.g., Schiff v. United States, 919 F.2d 830, 832-833 (2d Cir. 1990) (per curiam) (citing Roat v. Commissioner, 847 F.2d 1379, 1381-1382 (9th Cir. 1988)); Hartman v. Commissioner, 65 T.C. 542, 545 (1975); Smith v. Commissioner, at *7-*10.

**[\*33]** C.    Conclusion

Except with respect to the 2010 Form 1040 copy, respondent has shown the

elements specified in section 6702(a) necessary for him to impose on petitioner the

remaining four section 6702(a) penalties in issue.[8]  We next consider whether,

before assessing the penalties, respondent obtained the required written

supervisory approval.

III.    Written Supervisory Approval of the Penalties

A.    Introduction

Section 6751(b)(1) provides:  "No penalty under this title shall be assessed

unless the initial determination of such assessment is personally approved (in

writing) by the immediate supervisor of the individual making such determination

or such higher level official as the Secretary may designate."  Written supervisory

approval must be obtained before a section 6702(a) penalty is assessed, Kestin v.

Commissioner, 153 T.C. at 29, but it need not be obtained before the

Commissioner sends the taxpayer a Letter 3176C giving her the option to recant

and avoid the penalty, id. at 30.

---

[8]Necessarily, with respect to the elements of those penalties, respondent has carried "the burden of production" imposed on him by sec. 7491(c) "in any court proceeding with respect to the liability of any individual for any penalty * * * imposed by this title."

**[*34]** B.    Parties' Arguments

Respondent relies on the Forms 8278 to show that, before he communicated to petitioner the section 6702 penalties in issue, the immediate supervisors of the individuals initially determining the penalties approved the determinations in writing, thus satisfying his burden to produce evidence of compliance with section 6751(b)(1).[9]

Petitioner argues that the Forms 8278 are insufficient evidence of compliance because "[t]he purported signatures that appear on the Form 8278 appear to be 'facsimile signatures'" of the "Originator", "Supervisor", or "Manager", and, while the forms show the signature of someone described as "Manager", none are signed by an "Immediate Supervisor".

C.    Discussion

1.    Signatures

Petitioner's argument that the Forms 8278 show only facsimile signatures is without merit.  "Section 6751 requires only personal approval in writing, not any

_____

[9]Because respondent concedes the penalty with respect to the 2008 Form 1040 copy No. 2 and we sustain no penalty with respect to the 2010 Form 1040 copy, we need not concern ourselves with the attendant Forms 8278, and any subsequent reference to the Forms 8278 refers only to the forms attendant to the 2008 Form 1040 copy No. 1, 2009 Form 1040X, the 2010 Form 1040, and the 2011 Form 1040.

**[\*35]** particular form of signature or even any signature at all." <u>Deyo v. United States</u>, 296 F. App'x 157, 159 (2d Cir. 2008); <u>see also</u> <u>Palmolive Bldg. Inv'rs, LLC v. Commissioner</u>, 152 T.C. 75, 86 (2019) (citing <u>Deyo</u> and quoting that sentence).

2.    <u>Written Supervisory Approval Requirement</u>

In July 2020, we remanded this case to Appeals to give it the opportunity to verify compliance with the written supervisory approval requirements of section 6751(b)(1) for the section 6702 penalties.  In particular, we questioned whether the individual signing each of the Forms 8278 was the immediate supervisor of the individual making the initial determination to assess the penalty (i.e., the originator of the form).  We have reviewed the supplemental determination and conclude from the administrative record that respondent satisfied the written supervisory approval requirement with respect to three of the four penalties remaining in issue, i.e., the penalties with respect to the 2009 Form 1040X, the 2010 Form 1040, and the 2011 Form 1040.  The record does not support a similar showing for the penalty with respect to the 2008 Form 1040 copy No. 1.

SO Lerner reports that Ms. Evans communicated to him that, when on July 22, 2013, she signed the Form 8278 with respect to the 2009 Form 1040X, she was the direct manager of the originator of the Form 8278, i.e., Ms. Durrant. Ms. Ipson, Frivolous Return Program Coordinator, communicated to SO Lerner

[*36] that Rochelle Nichols was the direct supervisor of Ms. McNeeley, originator of the Forms 8278 with respect to the 2010 Form 1040 and the 2011 Form 1040, at the time she (Ms. Nichols) signed those Forms 8278. Those communications to SO Lerner, together with the corresponding Forms 8278, are evidence in the record from which he could conclude that the three Forms 8278 were signed, and the penalties approved, by the immediate supervisor of each individual making the initial determination to assess a penalty before the date of assessment shown on the form. Petitioner offers nothing in rebuttal. SO Lerner did not abuse his discretion in concluding that respondent's employees had obtained the necessary section 6751(b)(1) approvals of section 6702(a) penalties with respect to the 2009 Form 1040X, the 2010 Form 1040, and the 2011 Form 1040 before assessing those penalties.

With respect to the 2008 Form 1040 copy No. 1, Ms. Ipson informed SO Lerner that three individuals (Mss. Holcomb, Evans, and Mr. Owen) "were the department managers and direct supervisors of Ms. Durrant" when Ms. Durrant signed the attendant Form 8278. SO Lerner reasoned that the originator of the form "can only have one immediate manager/direct supervisor, and that therefore the * * * penalty * * * [was] valid because the Form 8278 was signed by the originator's immediate supervisor". Sheri Holcomb was the individual who signed

[*37] the Form 8278 approving the penalty with respect to the 2008 Form 1040 copy No. 1. But she was one of three individuals that Ms. Ipson described as Ms. Durrant's "immediate manager/supervisor" when Ms. Holcomb signed the form. We accept at face value SO Lerner's premise that an originating employee has only one immediate supervisor. Perhaps Ms. Ipson did not understand the question, but, on the basis of her answer, we think that the best one can conclude is that there was a one in three chance that Ms. Holcomb was Ms. Durrant's immediate supervisor when Ms. Holcomb signed the form. SO Lerner abused his discretion-- i.e., he did not have a sound basis in fact--in concluding that Ms. Holcomb was Ms. Durrant's immediate supervisor. Respondent failed to obtain the necessary section 6751(b)(1) approval of a section 6702(a) penalty with respect to the 2008 Form 1040 copy No. 1.

IV.    The Supplemental Determination

By the supplemental determination, Appeals Team Manager Hefty determined to sustain the NFTL but to abate the penalty assessed with respect to the 2008 Form 1040 copy No. 2. As discussed supra, we have determined that respondent must also abate the penalties assessed with respect to the 2008 Form 1040 copy No. 1 and the 2010 Form 1040 copy. With respect to the remaining penalties--i.e., with respect to the 2009 Form 1040X, the 2010 Form 1040, and the

[*38] 2011 Form 1040--respondent has carried his burden of proving petitioner liable for the penalties.

Moreover, with respect to those three penalties, we are satisfied that, from the same evidence (part of the administrative record), SO Lerner verified that, before assessing the penalties, respondent's employees obtained the required written supervisory approval. He recommended sustaining the NFTL. Reviewing his actions for abuse of discretion, we see no abuse. The lien may stand in so far as it relates to the penalties attendant to the 2009 Form 1040X, the 2010 Form 1040, and the 2011 Form 1040.

V.    Section 6673 Sanction

In pertinent part, section 6673(a)(1) provides a penalty of up to $25,000 if (1) the taxpayer has instituted or maintained proceedings before the Tax Court primarily for delay or (2) the taxpayer's position in the proceeding is frivolous or groundless. "A taxpayer's position is frivolous if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law." Rader v. Commissioner, 143 T.C. 376, 392 (2014) (quoting Goff v. Commissioner, 135 T.C. 231, 237 (2010)), aff'd in part, appeal dismissed in part, 616 F. App'x 391 (10th Cir. 2015). Furthermore, "[t]he purpose of section 6673 is to compel taxpayers to think and to conform their conduct to settled principles before they

**[*39]** file returns and litigate." Takaba v. Commissioner, 119 T.C. 285, 295 (2002). Given the public policy interest in deterring the abuse and waste of judicial resources, the authority of the Court to impose this penalty and decide in what amount is broad. See Leyshon v. Commissioner, T.C. Memo. 2015-104, at *24, aff'd, 649 F. App'x 299 (4th Cir. 2016). We may impose the penalty even where taxpayers have raised some issues that were neither frivolous nor groundless, along with issues that were frivolous or groundless. See, e.g., Powers v. Commissioner, T.C. Memo. 2009-229, 2009 WL 3171768, at *16.

We sanction petitioner under section 6673(a)(1) not for her conduct in filing frivolous returns but for raising her frivolous arguments before us. Some of the arguments petitioner raises--for instance, that the amounts she and her husband received from employer's and others for their services are not income--are arguments that we have found sanctionable under section 6673(a)(1)(B). E.g., Keown v. Commissioner, T.C. Memo. 2003-69; Fox v. Commissioner, T.C. Memo. 1993-277, aff'd, 69 F.3d 543 (9th Cir. 1995). Having read petitioner's 46-page brief, which repeats the arguments she made in the 29-page petition, and with which we have dealt supra, we believe that petitioner is deserving of a penalty

**[\*40]** because of the frivolous arguments she has made. We will impose on her a section 6673(a)(1) penalty of $2,500.

<u>An appropriate order and decision</u>

<u>will be entered</u>.